MONTGOMERY COUNTY HOSPITAL
DISTRICT, Appellant,

v.

Tonya SMITH, Appellee.

No. 09–05–137 CV.

Court of Appeals of Texas,
Beaumont.

Submitted Oct. 27, 2005.

Decided Dec. 15, 2005.

Phillip W. Bechter, Schwartz, Junell, Greenberg & Oathout, LLP, Houston, for appellant.

Kevin L. Hood, Fabrega, Hood, Raynes & Fass, LLP, Houston, for appellee.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

The trial court denied a plea to the jurisdiction filed by the Montgomery County Hospital District (hereafter "MCHD"). The MCHD appeals the trial court's denial. We reverse and render.

In this suit, Tonya Smith, formerly employed by the MCHD, alleges the hospital terminated her in violation of Section 554.002(a) of the Whistleblower Act. TEX. GOV'T CODE ANN. §§ 554.001–.010 (Vernon 2004). Smith contends that her termination occurred as a consequence of her report to one of MCHD's board members that James Hamilton, MCHD's CEO, entered into a contract to sell a building owned by the MCHD. Smith alleges that her report of the MCHD's entering into this contract resulted in a change in attitude toward her by Hamilton, and led to a concerted effort in which he sought to find "any item to criticize" her.

Several months later, Smith claims that Hamilton reassigned her from her duties as a liaison between the MCHD's board and its employees to duties in a storage warehouse. On November 20, 2003, seven days after being reassigned to the warehouse, Smith asserts that Hamilton fired her under the pretext that "[it's] just not working out." The MCHD denied Smith's claims, and asserted that Smith's termination was based on her poor job performance and conduct unrelated to her retaliation claim.

Following her termination, the MCHD offered Smith a severance package. The MCHD offered to continue to pay Smith through the end of December, 2003 or for approximately six weeks following her termination, in exchange for a release of her claims. Ultimately, Smith rejected the MCHD's severance offer.

On December 1, 2003, Smith alleges that she requested Hamilton, MCHD's CEO, to "reconsider his decision." On that date, Smith e-mailed a request to Hamilton. Smith's request is central to the resolution of the issues on appeal. Her e-mail to Hamilton states:

From: Tonya Smith [e-mail address deleted]

Sent: Monday, December 01, 2003 9:49 AM

To: Hamilton, James

Subject: Release of Claims

Importance: High

Mr. Hamilton,

I hope that you had a good holiday with your family. I have spoken to Stacy regarding the release of claims document. She told me that you were standing by the number of 4,200 for my release. I am sincerely asking you to please reconsider. I know that you have a good heart and that is why I am even asking again. It would help my family

out tremendously with the upcoming holidays and such to have the extra monies to keep us afloat for a little while. Again, I am sincerely asking to please, please reconsider. When I spoke to Greg he said that you were able to, but had to make the decision. I enjoyed working with you and the organization and am truly sorry for the way things worked out.

Please let me know so I may come to the District to finalize ever[y]thing.

Sincerely,

Tonya

The parties disagree on the meaning of Smith's December 1, 2003 e-mail to Hamilton. Smith contends her e-mail constituted an appeal of Hamilton's decision to terminate her employment. On the contrary, the MCHD contends the e-mail was not an appeal of Smith's termination and points to Smith's deposition testimony where Smith testified she did not intend her December 1, 2003 e-mail to constitute an appeal of her termination.

Alternatively, if the December 1, 2003 e-mail is not sufficient to constitute an appeal of Smith's termination, Smith invites us to create a judicial exception to Section 554.006 of the Texas Government Code, wherein the Legislature requires that a public employee invoke the applicable grievance or appeal procedure before filing a suit. Smith argues that appealing her termination through the MCHD appeal procedures would have been futile since Hamilton was her direct supervisor and the MCHD's CEO. In response, the MCHD asserts that futility is not a recognized exception to the administrative appeal requirements established by the Legislature.

Finally, Smith asserts that complying with the grievance or appeal procedures of a governmental entity is procedural, and

not jurisdictional. As a result, Smith contends that the remedy for any failure on her part to comply with the MCHD's appeal procedures is to abate her claims to allow them to go through the MCHD's grievance procedures. The MCHD, on the other hand, asserts that Smith's compliance with its appeal process is jurisdictional. As a result, the MCHD argues that we are required by law to dismiss Smith's suit because it remains immune from her Whistleblower claims when its appeal process is not invoked as required by the Act.

To resolve this appeal, we must consider two issues. Did Smith initiate the MCHD's disciplinary appeal process? If she did not initiate the appeal process, is her failure to do so a jurisdictional or procedural defect in her claim? We hold that Smith did not initiate the appeal process. We further hold that Smith's failure to initiate an appeal under the MCHD's appeal procedures is a jurisdictional defect that deprives the trial court of jurisdiction over her suit. As a result, we dismiss Smith's claims against the MCHD.

## STANDARD OF REVIEW

The Montgomery County Hospital District was created under the authority of the Texas Constitution and statute, Act of May 12, 1977, 65th Leg., R.S., ch. 258, 1977 Tex. Gen. Laws 678–687. *See* TEX. CONST. ART. IX, § 9; TEX. HEALTH & SAFETY CODE ANN. ch. 286 (Vernon 2001 & Supp.2005). No party contends that the MCHD is not either a state or local governmental entity with respect to Chapter 554 of the Texas Government Code, and Smith specifically alleged that the MCHD "is a political subdivision of the State of Texas."

A governmental unit, as statutorily defined, may file an interlocutory appeal from a denial of its plea to the jurisdiction. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2005);

§ 101.001 (Vernon 2005). The definition of "governmental unit" in Section 101.001 does not specifically include hospital districts, but the statutory definition of governmental unit is nevertheless broad, and includes any "institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or laws passed by the legislature...." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(D) (Vernon 2005). Moreover, no party contends that the MCHD does not have the right to an interlocutory appeal, or that the MCHD does not qualify as a governmental unit under the broad definition contained in section 101.001 of the Civil Practice and Remedies Code. Thus, we have jurisdiction over this appeal.

A party, by asserting a plea to the jurisdiction, contests the trial court's authority over the subject matter of the dispute. *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 639 (Tex.1999). We review the district court's ruling on a plea to jurisdiction under a de novo standard. *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex.2002). In evaluating MCHD's plea to the jurisdiction, it is appropriate to consider relevant evidence when necessary to resolve the plea. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). "[I]f the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex.2004).

In this case, the only evidence proffered by Smith that she argues constituted her attempt to comply with MCHD's disciplinary appeal procedures is her e-mail dated December 1, 2003. The MCHD's receipt of the e-mail, and its content, are not

disputed. Also, the MCHD submitted a copy of its policies and procedures manual to the trial court, and there is no evidence that these were not the policies and procedures relevant to Smith's termination. Thus, we review the trial court's decision regarding whether Smith's e-mail initiated the MCHD's appeal process de novo.

## GRIEVANCE AND APPEAL PROCEDURES

The evidence is undisputed that the MCHD gave Smith a copy of its policy and procedure manual when she worked for the district. MCHD's policy # 10–413 described MCHD's disciplinary appeal process, in pertinent part, as follows:

DISCIPLINARY APPEAL PROCESS

A staff member wishing to appeal a disciplinary action shall notify in writing the Chief Administrative Officer within five (5) days of the disciplinary action.

The Chief Administrative Officer may elect to take the following action:

1. Review the request and deny the appeal
2. Review the request and remand the decision to the Department Manager for consideration
3. Grant the request a formal review

Action Available to the Chief Administrative Officer:

Should the Chief Administrative Officer grant the appeal, a hearing will be held at a mutually convenient time for the parties involved. Upon hearing both sides, the Chief Administrative Officer may elect to take the following action:

1. Reverse the action
2. Remand the decision to the Department Manager for reconsideration
3. Uphold the decision of the Department Manager
4. Enact a more severe disciplinary action

After exhausting due process remedies within the department, the employee may appeal the Chief Administrative decision to the Board of Directors within established policies of the Board of Directors.

The Texas Whistleblower Act prevents state or local governmental entities from suspending, terminating, or taking an adverse personnel action against a public employee who in good faith reports a violation of law by the governmental entity to an appropriate law enforcement authority. TEX. GOV'T CODE ANN. § 554.002(a) (Vernon 2004). With respect to Texas Whistleblower claims, the Legislature, through the Whistleblower Act, waived the government's sovereign immunity "to the extent of liability for the relief allowed under this chapter for a violation of this chapter." TEX. GOV'T CODE ANN. § 554.0035 (Vernon 2004). However, in its efforts to protect public employees from unlawful retaliatory actions of governmental employers, the Legislature did not grant aggrieved public employees the right to proceed directly to court. Section 554.006 of the Texas Government Code provides:

(a) A public employee must initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action before suing under this chapter.

(b) The employee must invoke the applicable grievance or appeal procedures not later than the 90th day after the date on which the alleged violation of this chapter:

(1) occurred; or

(2) was discovered by the employee through reasonable diligence.

TEX. GOV'T CODE ANN. § 554.006 (Vernon 2004).

Our court previously stated that, under this provision of the Government Code, "[t]he Whistleblowers' Act requires invocation of the appeal procedure by the public employee bringing the claim." *Univ. of Tex. Med. Branch at Galveston v. Savoy*, 86 S.W.3d 782, 785 (Tex.App.-Beaumont 2002, pet. denied). The Texas Supreme Court, in *University of Texas Medical Branch at Galveston v. Barrett*, 159 S.W.3d 631, 632 (Tex.2005), also recently stated, "Before suing under the Texas Whistleblower Act, a public employee must timely initiate his employer's grievance or appeal procedures relating to employee discipline."

In evaluating whether Smith's December 1, 2003 e-mail initiated the MCHD's appeal process, we note that there are no established standards by which to judge whether a public employee has initiated a grievance and appeal procedure. The MCHD appeal procedure requires that its employee's notice of appeal for disciplinary actions be made in writing to its Chief Administrative Officer, and that it be made within five days of the disciplinary action. The MCHD's procedures do not require that the notice of an employee's appeal be made on a particular form or contain any particular language.

In reviewing potential standards that might be applied to Smith's e-mail to determine whether it constitutes an appeal of her termination, we are aware of cases interpreting Civil Procedure Rule 47, which requires that pleadings give fair notice to opponents of the claim involved. Tex.R. Civ. P. 47(a). In numerous cases, courts have interpreted whether various pleadings comply with the fair notice requirement. *See .e.g. Southwestern Bell Telephone Co. v. Garza*, 164 S.W.3d 607, 615–17 (Tex.2004)(finding that a petition asserting retaliatory discharge and wrongful discharge was sufficient to give opponent fair notice of discrimination claim); *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896–897 (Tex.2000)(finding that the fair notice standard examines whether opponent can ascertain nature and basic issues of controversy and what testimony will be relevant); *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex.1993)(finding that pleading negligent infliction of emotional distress was insufficient to put opponent on fair notice of claim asserting grossly negligent infliction of emotional distress); *Stoner v. Thompson*, 578 S.W.2d 679, 683–684 (Tex.1979)(pleading must give fair notice of claims to opposing party); *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 186 (Tex.1977)(finding that pleadings are liberally construed, and court looks to the pleader's intent even when some element of that cause of action is not specifically alleged); *Gulf, Colo. & S.F. Ry. Co. v. Bliss*, 368 S.W.2d 594, 599 (Tex.1963)(finding that every fact is supplied that can be reasonably inferred from what is stated, even if an element of a cause of action is not stated).

Additionally, in *University of Texas Southwestern Medical Center at Dallas v. Loutzenhiser*, 140 S.W.3d 351 (Tex.2004), the Texas Supreme Court considered whether a public health care provider, which allegedly caused a birth defect, received notice of a malpractice claim as required by the Tort Claims Act. The child's father called the health care provider following the birth of his child and informed the provider that his child was born with a birth defect. *Loutzenhiser*, 140 S.W.3d at 357. However, the father did not notify the health care provider that he intended to claim that his child's birth defect had been caused by care rendered by the health care provider. *Id.* The Supreme Court concluded that the telephone call did not give the health care provider notice under the Tort Claims Act and required the claimant to provide a

notice that made the health care provider subjectively aware that it was at fault for the alleged deformity. *Id.* at 358. However, the notice language of the Tort Claims Act varies from the notice language of the Whistleblower Act. *Compare* TEX. CIV. PRAC. & REM.CODE ANN. § 101.101(a) (Vernon 2005) with TEX. GOV'T CODE ANN. § 554.0035 (Vernon 2004).

■ In the absence of a statutory standard or a standard created by an employee manual detailing the required contents of a public employee's notice of appeal, we hold that the notice must give the employer fair notice that the public employee desires to appeal the employer's disciplinary decision and fair notice of the decision made by the employer from which the employee desires to appeal. By being given such a notice, the employer will be aware that its employee has appealed from its disciplinary decision and will know which of its employment decisions are being made the subject of its appeal process. We further hold that the public employee's notice of appeal must be given not later than the ninetieth day after the date the alleged violation occurred, or was discovered by the employee through reasonable diligence, in order to meet the Whistleblower Act's notice requirement. TEX. GOV'T CODE ANN. § 554.006 (Vernon 2004).

■ The disciplinary decisions at issue in this case are Smith's reassignment and her termination. She sent her e-mail on the eleventh day after her termination, rather than within five days as required by MCHD's policy manual. Although Smith's e-mail was filed late under MCHD's policy manual, her e-mail fell within the ninety day period allowed under the Whistleblower Act. *See id.* Because the e-mail that arguably constitutes Smith's notice of her disagreement with an aspect of her severance was sent within ninety days of her termination, and within ninety days of her

reassignment to the warehouse, we consider the e-mail to be timely under the deadlines established by the Whistleblower Act.

We next consider whether the content of Smith's December 1, 2003 e-mail constitutes a notice of appeal of her reassignment or termination under the MCHD employment manual, which are the issues she complains about in her suit. Smith's December 1, 2003 e-mail makes no reference to Smith's desire to initiate MCHD's appeal and grievance process. Importantly, Smith does not mention that she wants the issue of her reassignment or her termination reconsidered. In this e-mail, Smith's only request to reconsider concerns the amount she was offered in severance pay. However, in her lawsuit Smith makes no complaint that the MCHD's severance offer was less than that received by similar employees under similar circumstances.

We conclude that no reasonably prudent employer could have been subjectively aware that Smith, by virtue of this e-mail, desired to invoke the MCHD's disciplinary appeal process with respect to her termination or job reassignment. We hold that Smith's e-mail did not give the MCHD fair notice of her desire to invoke the MCHD's appeal and grievance process with respect to her termination or reassignment. Accordingly, we hold that as a matter of law Smith failed to initiate MCHD's grievance or appeal process with respect to the complaints she asserts in her suit.

## IMMUNITY

■ Recently, the Texas Supreme Court expressly declined to resolve whether the failure of an aggrieved public employee to submit a Whistleblower claim to his employer's grievance procedure is jurisdictional. *Univ. of Tex. Med. Branch at Galveston v. Barrett,* 159 S.W.3d 631, 632–

33 (Tex.2005).[1] In this case, however, we are required to decide the issue. If the failure to give notice and invoke grievance procedures is jurisdictional, we would dismiss Smith's claims. On the other hand, if the Legislature intended to waive immunity when a public employee fails to initiate her employer's grievance procedures, we would abate Smith's claims to allow her to engage in MCHD's grievance and appeal process.

▮ In general, the State is immune under the doctrine of sovereign immunity absent an express waiver by the entity of its immunity. *Miranda*, 133 S.W.3d at 224. "Governmental immunity, on the other hand, protects political subdivisions of the State, including counties, cities, and school districts." *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex.2003). "Courts often use the terms sovereign immunity and governmental immunity interchangeably." *Id.*

With respect to Whistleblower claims, the Texas Government Code contains a limited waiver of sovereign immunity. TEX. GOV'T CODE ANN. § 554.0035 (Vernon 2004) provides that, "[s]overeign immunity to suit is waived and abolished to the extent of liability" created by the Whistleblower Act. Also, this same provision contains a waiver to suit: "A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chap-

ter." *Id.* Thus, the Legislature appears to have used the term sovereign immunity to refer to both types of immunity in the Whistleblower Act.

In analyzing statutory waivers of immunity involving governmental entities, we note that section 311.034 of the Code Construction Act provides: "In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." TEX. GOV'T CODE ANN. § 311.034 (Vernon 2004). Therefore, in evaluating the Legislature's intent, we apply the clear and unambiguous language rule to resolve whether the Legislature waived sovereign or governmental immunity when a public employee fails to initiate her employer's grievance and appeal process. *Compare* TEX. GOV'T CODE ANN. § 311.034 (interpreting statutes that waive sovereign immunity) with TEX. GOV'T CODE ANN. § 554.0035 (Vernon 2004)(establishing limited waiver of immunity under Whistleblower Act).

▮▮ "It is settled in Texas that for the Legislature to waive the State's sovereign immunity, a statute or resolution must contain a clear and unambiguous expression of the Legislature's waiver of immunity." *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex.2003).

---

1. At the time *Barrett* was decided on March 11, 2005, section 311.034 of the Government Code stated, in its entirety: "In order to preserve the legislature's interest in managing state fiscal matters, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear an unambiguous language. In a statute, the use of 'person,' as defined by Section 311.005 to include governmental entities, does not indicate legislative intent to waive sovereign immunity unless the context of the statute indicates no other reasonable construction."

Subsequent to *Barrett*, the Legislature amended section 311.034 by adding an additional sentence: "Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity." *See* Act of May 25, 2005, 79th Leg., R.S., ch.1150, 2005 Tex. Gen. Laws 3783. The amendment's legislative history shows that the Legislature intended to clarify section 311.034. House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 2988, 79th Leg., R.S. (2005). References

"Second, when construing a statute that purportedly waives sovereign immunity, we generally resolve ambiguities by retaining immunity." *Id.* at 697.

Section 554.006(a) of the Government Code creates a limitation on a public employee's right to file suit, and this section is found in the same chapter that creates the public employee's rights and remedies in Whistleblower cases. It provides:

(a) A public employee must initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action *before suing under this chapter.*

TEX. GOV'T CODE ANN. § 554.006(a) (Vernon 2004) (emphasis added). Thus, the Legislature has expressly decreed that Whistleblower Act claimants "must" initiate the grievance or appeal process "before suing." The Code Construction Act states that the word " '[m]ust' creates or recognizes a condition precedent." TEX. GOV'T CODE ANN. § 311.016(3) (Vernon 2005).

We also find guidance on the issue of whether the failure to give notice under the Whistleblower Act is jurisdictional from the Texas Supreme Court's analysis in *Loutzenhiser.* In reaching the conclusion that the failure to give proper notice under the Tort Claim's Act was not jurisdictional, the Court contrasted the Tort Claims Act's notice provision that the governmental unit "is entitled to receive notice" with statutes that use the word "must." *Loutzenhiser,* 140 S.W.3d at 359–60. In part, because the Tort Claims Act did not state that the claimant "must" give notice, the Supreme Court held that a claimant's failure to give the notice required by the Tort Claims Act "does not deprive a court of subject matter jurisdiction over an action on the claim." *Id.* at 362. The Court explained, "The use of 'is

entitled to' rather than 'must'—which was surely an intentional choice by the codifiers in deciding to abandon 'shall'—is therefore some indication that the Legislature did not intend notice to be either a condition precedent to waiver of immunity or jurisdictional." *Id.* at 359.

Based upon the Code Construction Act, Texas law regarding waivers of immunity by governmental entities, and the clear language of the Act, taken as a whole, we conclude that the Legislature intended to make the initiation of the government employer's grievance procedure mandatory. Because the Whistleblower Act does not evidence in clear and unambiguous terms an intent to waive immunity when the public employee fails to initiate grievance and appeal procedures, we conclude that, absent notice when required by the employer's grievance procedures, the Legislature did not intend to waive its sovereign immunity.

■ We recognize that "[e]ven if a statutory requirement is mandatory, this does not mean that compliance is necessarily jurisdictional." *Helena Chemical Co. v. Wilkins,* 47 S.W.3d 486, 494 (Tex.2001)(construing a statute that required purchasers of agricultural seeds to submit disputes to arbitration as a prerequisite to exercising its right to maintain a legal action); *Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71 (Tex.2000)(construing a statute permitting suits for personal injury or wrongful death of a citizen of a foreign country in Texas courts if the injured party's country has "equal treaty rights" with the United States). "When a statute is silent about the consequences of noncompliance, we look to the statute's purpose to determine the proper consequences." *Helena Chemical Co.,* 47 S.W.3d at 494. In *Helena Chemical* and *Dubai,* however, the statutes at issue did not require the application of the clear and unambiguous

language rule that is applicable to sovereigns.

In our view, the Whistleblower Act is not silent on the issue of noncompliance, as it requires that the public employee *must* utilize the employer's grievance and appeal procedure as a statutory prerequisite to filing suit. Nevertheless, we recognize that our state appellate courts are divided on whether the failure of a public employee to comply with statutory prerequisites creates a jurisdictional or a non-jurisdictional defect. *See Univ. of Houston v. Barth,* 178 S.W.3d 157, 161 (Tex.App.-Houston [1st Dist.] 2005)(no pet. history)(finding notice requirement of Whistleblower Act to be jurisdictional defect); *City of Roman Forest v. Stockman,* 141 S.W.3d 805 (Tex.App.-Beaumont 2004, no pet.)(treating statutory prerequisites as jurisdictional); *Tex. S. Univ. v. Carter,* 84 S.W.3d 787, 792 (Tex.App.-Houston [1st Dist.] 2002, no pet.)(treating notice requirement as jurisdictional); but *see Univ. of Houston v. Elthon,* 9 S.W.3d 351 (Tex. App.-Houston [14th Dist.] 1999, pet. dism'd w.o.j.)(treating statutory prerequisites as non-jurisdictional defect); *Castleberry Indep. Sch. Dist. v. Doe,* 35 S.W.3d 777, 781 (Tex.App.-Fort Worth 2001, pet. dism'd w.o.j.)(treating statutory prerequisites as non-jurisdictional defect); *Tex. Dep't of Mental Health & Mental Retardation v. Olofsson,* 59 S.W.3d 831, 832 (Tex.App.-Austin 2001, pet. dism'd.)(treating statutory prerequisites as non-jurisdictional defect).

In summary, the Legislature mandates that we adopt a narrow interpretation of waivers of governmental immunity. Smith's claim exists solely by statutes that allow, under limited circumstances, a remedy otherwise unavailable to public employees at common law. As a result, it is within the Legislature's power to define when and under what terms immunity is waived. The statute contains a mandatory condition precedent to the employee's filing suit, consisting of a requirement that before suing the employee invoke the public employers' grievance and appeal procedures. Smith did not fulfill the required condition precedent before she filed suit. Accordingly, under these circumstances, the Legislature did not waive the MCHD's immunity from Smith's suit.

## FUTILITY

■ Smith argues that it would have been futile for her to have engaged in the MCHD's appeal process. Smith reasons that under the MCHD's appeal procedures, the person reviewing her termination was "the person who made the decision to fire her and whom she accused of committing a crime." As a result, Smith asserts that the courts should create an exception to the statute's requirement that a public employee invoke her employer's appeal procedures when doing so would have been futile.

The MCHD, on the other hand, argues that the Whistleblower Act contains no futility exception. The MCHD cites *Breaux v. City of Garland,* 205 F.3d 150 (5th Cir.2000) for the proposition that courts have rejected the judicial creation of a futility exception for Texas Whistleblower Act claims.

In *Breaux,* the trial court granted the City's request for judgment as a matter of law because the employee involved, a police officer, failed to initiate an Internal Affairs investigation into his complaints before bringing a Whistleblower suit. The police officer argued "that the Internal Affairs process could not resolve complaints against the Chief of Police; filing a complaint with Internal Affairs would be futile since the Chief of Police determines whether an investigation should be initi-

ated and ultimately reviews the results." *Id.* at 162.

In *Breaux*, the Fifth Circuit states, "This court also refuses to create a futility exception under such circumstances." *Id.* at 163. The Fifth Circuit reasoned that under the Garland Internal Affairs rules, the Chief of Police was recused from reviewing the disciplinary decision at issue because of his conflict of interest, and as a result other decision makers succeeded to the Chief's position for purposes of reviewing the disciplinary decision at issue. Under these circumstances, the Fifth Circuit declined to create a futility exception under the Texas Whistleblower Act. *Id.* at 164.

In reviewing MCHD's policy manual, we find no succession rules akin to the rules of the City of Garland's police department. But, under MCHD's appeal procedures, its employees may appeal the Chief Administrative Officer's decision to the Board of Directors. Thus, there is a right under the MCHD's policies to have decisions reviewed by people who did not make the initial decision and who could override the decision made by Hamilton. Smith also asserts that the MCHD failed to establish procedures regarding the appeal to its Board of Directors. While the absence of specific procedures regarding an appeal to the Board of Directors make the MCHD's rules somewhat ambiguous, we believe that Smith could have protected her rights to file a suit: (1) by sending a letter within ninety days of the alleged violation of the Whistleblower Act to MCHD's Board; (2) stating in the letter that she invoked her right to appeal her termination to the Board of Directors because of Hamilton's alleged conflict of interest; and (3) informing the Board that she was invoking its grievance procedures. She could have further advised that MCHD had sixty days following her notice in which to conclude

its grievance procedure. *See* Tex. Gov't Code Ann. § 554.006(d) (Vernon 2004)(allowing up to sixty days for employer to render final decision); *see also Beiser v. Tomball Hosp. Auth.*, 902 S.W.2d 721, 724 (Tex.App.-Houston [1st Dist.] 1995, writ denied)(finding that letter invoking grievance procedures sent in response to unclear post-termination grievance procedures perfected employee's right to sue). Had Smith filed such a notice, the MCHD could have decided whether to allow Hamilton to review the decision, or someone else. Regardless of the MCHD's response to a notice by Smith invoking an appeal of her termination, Smith's rights to sue would have been preserved.

By perfecting the right to sue by invoking her employer's appeal process, the public employee retains the right to pursue her day in court. Although Smith might not have succeeded at the initial stages of the procedure, exercising her appeal rights would not have been futile. By doing so, Smith would have ensured that she preserved the opportunity to have her employer's decision reviewed by an impartial fact finder.

With respect to her reassignment and termination, Smith never initiated her administrative remedies. Creating a futility exception under these circumstances would graft terms onto the Whistleblower Act that were not chosen by the Legislature.

Finally, creating a futility exception would be redundant because the statutory procedures already guarantee access to an impartial review. Under the circumstances here, we decline Smith's invitation to adopt a futility exception to the Whistleblower Act's mandate that public employees must initiate their employers' grievance and appeal procedures to preserve their rights to sue.

We sustain MCHD's issue that the trial court erred in denying MCHD's plea to

855

the jurisdiction. We reverse the trial court's order denying MCHD's plea to the jurisdiction and render judgment dismissing Smith's claims against MCHD.

REVERSED AND RENDERED.