Opinion filed December 14, 2006



















 
 
  
 
 







 
 
  
 
 




Opinion filed December 14, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00320-CV 

                                                    __________

 

                              MEDICAL ARTS HOSPITAL, Appellant

                                                             V.

                                        DENEE
ROBISON, Appellee

 



 

                                         On
Appeal from the 106th District Court

                                                        Dawson County, Texas

                                          Trial
Court Cause No. 04-03-16975-CV

 



 

                                                                   O
P I N I O N

 

Denee Robison sued Dawson County Hospital
District, Medical
 Arts Hospital,
and several hospital employees alleging fraud, wrongful termination, and
violation of the Texas Whistleblower Act.[1]  Medical Arts filed a plea to the jurisdiction
alleging that Robison did not initiate a grievance before filing suit and,
therefore, that her whistleblower claim was jurisdictionally barred.  The trial court denied the plea.  We reverse and render.

                                                             I.  Background Facts








Robison worked as a registered nurse for Medical
Arts.  Medical Arts provides medical
personnel for a local state prison unit and assigned Robison to it.  Robison alleges that she observed illegal
activities at the unit, reported them to the Texas Labor Board, and was
terminated for doing so.  Medical Arts
denies that Robison was fired.  The
hospital contends that her position was eliminated and that she was offered
other hospital jobs which she refused. 
If Robison was terminated, Medical Arts contends that it has a grievance
procedure which required her to file a written grievance with her supervisor
and that she failed to do so.[2]

Robison alleges that she was terminated on
February 13, 2004.  The parties agree
that she met with the hospital=s
administrator, Charles Butts, on February 9 to discuss her position=s elimination.  Robison=s
husband, Justin, was also a registered nurse; and he too worked for Medical
Arts.  He planned to enroll in a master=s program and had offered to resign and
let Robison have his position.  Robison
and Butts discussed Justin=s
offer.  Butts declined it and advised her
that, if Justin left, they would have to post his position.

Robison asked Butts if her termination was
personal, and he said that it was due entirely to budgetary reasons.  Robison told Butts that she disagreed with
his decision and that she would meet with the hospital board.  She contends that Butts responded by saying
that she would not score any points with him for doing so.  She did place her name on the board=s agenda but subsequently removed it on
the advice of counsel.  Her only other
substantive contact with the hospital occurred when she contacted the hospital=s HR director.  Robison asked what she could do about the
circumstances surrounding her position and was told there was nothing she could
do because it was for budgetary and not disciplinary reasons.

Robison provided Butts with letters of
recommendation on her behalf, but did not file a written grievance nor
otherwise provide written notice of her intention to pursue a whistleblower
claim.  Instead, she filed suit on March
29, 2004.  Medical Arts filed a plea to
the jurisdiction challenging the trial court=s
jurisdiction over Robison=s
whistleblower claim.  The trial court
held a hearing and denied the plea.

                                                                       II.  Issues

Medical Arts challenges the trial court=s ruling with one issue, contending
that Robison=s
whistleblower claim is jurisdictionally barred due to her failure to initiate a
grievance.








                                                            III.
Standard of Review

Subject-matter jurisdiction is a question of law
subject to de novo review.  Tex. Natural Res. Conservation Comm=n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002).  We do not look to the merits of the case but
consider only the pleadings and evidence relevant to the jurisdictional
inquiry.  Tex.
Dep=t of
Parks & Wildlife v. Miranda, 133 S.W.3d 217, 227 (Tex. 2004).

                                                                     IV.
Analysis

The Whistleblower Act requires a claimant to
timely initiate Agrievance
or appeal procedures of the employing state or local governmental entity
relating to suspension or termination of employment or adverse personnel action
before suing.@[3]  The statute provides the claimant with the
discretion to exhaust any applicable grievance proceedings prior to filing suit
or to terminate the proceedings and file suit after sixty days have
elapsed.  See Midland
Indep. Sch. Dist. v. Watley, No. 11-04-00262-CV, 2006 WL 1451565 (Tex. App.CEastland May 25, 2006, no pet.).

A.  Is
Filing a Grievance Jurisdictional?

Intermediate courts of appeal have disagreed over
whether filing a grievance is jurisdictional or simply a bar to recovery in
light of recent supreme court decisions such as Dubai Petroleum Co. v. Kazi,
12 S.W.3d 71 (Tex. 2000).[4]  The Texas Supreme Court recently declined to
resolve this split. See Univ. of Tex.
Med. Branch at Galveston v. Barrett, 159
S.W.3d 631, 632-33 (Tex.
2005).  The legislature, however,
addressed this issue during the 2005 regular session.  At the time of the Barrett decision, Tex. Gov=t Code Ann. '
311.034 (Vernon
Supp. 2006) provided:

In order to preserve the legislature=s interest in managing state fiscal
matters through the appropriations process, a statute shall not be construed as
a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous
language.  In a statute, the use of Aperson,@
as defined by Section 311.005 to include governmental entities, does not
indicate legislative intent to waive sovereign immunity unless the context of
the statute indicates no other reasonable construction.








 

Subsequent to Barrett, the legislature added the following
sentence to the statute: AStatutory
prerequisites to a suit, including the provision of notice, are jurisdictional
requirements in all suits against a governmental entity.@[5]

Governmental entities have two types of
immunity:  immunity from suit and
immunity from liability.  See City
of New Braunfels v. Allen, 132 S.W.3d 157,
164 (Tex.
App.CAustin
2004, no pet.).  We believe that the
legislature intended to make clear that a governmental entity=s immunity from suit for a
whistleblower claim is conditioned upon timely filing a grievance.  See
Montgomery County
Hosp. Dist. v. Smith, 181 S.W.3d
844, 853 (Tex.
App.CBeaumont
2005, no pet.) (reading Section 311.034=s
amendment to compel the same conclusion).

There is no dispute that Robison did not file a
written grievance or that she did not prior to filing of her suit bring her
retaliation claim to the hospital=s
attention.  Robison contends that the
trial court still had jurisdiction because the hospital=s
policy was  vague and unclear and she
took action to initiate a grievance, because she orally put the hospital on
notice of her grievance, and because she was told that there was nothing she
could do to fight her termination and thus further action was unnecessary.

B.  Does
Medical Arts Have An Enforceable Grievance Policy?








Robison relies upon cases such as Fort Bend
Independent School District v. Rivera, 93 S.W.3d 315 (Tex. App.CHouston [14th Dist.] 2002, no pet.),
for the proposition that, when an employer=s
grievance policy is unclear, strict compliance with it is unnecessary to
preserve a whistleblower claim.  The Fort Bend
grievance policy required employees to first meet with their immediate
supervisor.  If this did not resolve the
grievance, employees could initiate a level two grievance by providing a
written grievance to their immediate supervisor.  The plaintiff=s
grievance concerned her immediate supervisor. 
She attempted to meet with her supervisor, but the supervisor refused to
schedule a meeting.  The plaintiff=s daughter contacted the school
district to learn what step to take next and was incorrectly told to deliver a
written grievance to the level two hearing officer rather than plaintiff=s immediate supervisor.  The plaintiff followed the district=s instructions and delivered a written
grievance to her level two hearing officer. 
The Houston Court
held that, even though the plaintiff did not strictly comply with the school
district=s
grievance policy, her whistleblower claim was not barred because an employer
cannot refuse to meet with an employee and then contend that the employee
failed to follow the policy.  Id. at 320.

To the extent the court reached this result by
relying on estoppel, it is unclear whether Rivera is a correct statement
of the law.  See Wilmer-Hutchins
Indep. Sch. Dist. v. Sullivan, 51 S.W.3d 293 (Tex. 2001) (jurisdiction over suit for
retaliatory discharge cannot be created by estoppel).  We do, however, agree with the ultimate
result.  The Whistleblower Act requires
employees to initiate a grievance and provide the governmental entity with at
least sixty days to address it so that the employer has the opportunity to
correct its own errors by resolving disputes before being subjected to the
expense and effort of litigation.  Breaux
v. City of Garland,
205 F.3d 150, 163 (5th Cir. 2000). 
Delivering the grievance to the level two hearing officer rather than
plaintiff=s
immediate supervisor did not deprive the district of either notice or the
opportunity to resolve plaintiff=s
claim before facing litigation.

            The hospital=s
handbook is, unfortunately, not entirely clear on an employee=s right to pursue a grievance if
terminated.  The handbook refers to
terminations in section two, but this section does not include an appeal
process.  Medical Arts contends the handbook
elsewhere contains a grievance process following termination and refers to the
following provision:

V.  EMPLOYEE EMPLOYMENT INFORMATION:

 








A.  Employee
Problem Solving Procedure: Employees of Medical Arts
 Hospital should attempt
to obtain answers to questions or solutions to work related problems from their
supervisors or Department Managers.  If
employees are not satisfied with the response of their supervisors they may
utilize the Medical Arts Hospital Employee Problem Solving Procedure.  Unanswered questions or unresolved problems
are not desirable in the work situation as they can lead to inefficiency,
ineffectiveness and disruption of work. 
Reasons for an employee problem solving procedure problem may include,
but are not limited to, a change in job status, demotion or termination.  Appraisal results and attendant pay raise can
not (sic) be addressed using the Problem Solving Procedure.  The Employee Problem Solving Procedure gives
the employees the opportunity to formally bring the situation forward for
proper handling that is designed to provide satisfaction for the parties
involved.  It is important that problems
be presented promptly, IN WRITING. 
This written submission should be made within three working days of the
alleged situation so that the facts may be readily obtained and a decision
reached.  If the problem involves the
employee=s
supervisor the employee may go to the next person in the chain of command to
start the procedure=s
process.  Time limits in the steps of the
problem solving procedure are not intended to be a hinderance (sic) in an
employee complaint situation.  However,
if employees presenting complaints do not appeal from one step to another
within the specified number of working days, excluding Saturday, Sunday and
holidays, the matter will be considered closed, unless the employees show
unusual circumstances that prevented them from appealing within the time limit
stated.  The time limits given may be
extended by mutual written consent of the employees involved and the
Administrator.  The steps in the Problem
Solving Procedure are as follows:

 

1.  Step
1-Immediate Supervisor: Employees and their immediate supervisor are
encouraged to settle problems by and through prompt, thorough discussion.  If this joint effort does not succeed, then
the complaint should be submitted in writing by the employee to the immediate
supervisor.  The supervisor will respond,
in writing within two working days.  If
the response is not acceptable to the employee, the written complaint may then
[be] forwarded by the employee to the Department Manager within three working
days.

 

The policy then provides for an appeal to the department manager,
administrator, and governing board.

The employee handbook is not ideal, but it does
contain a process by which an employee may grieve their termination.  Robison did not strictly comply with that
process by filing a written grievance. 
This alone, however, is insufficient to deprive the trial court of
jurisdiction.  The Whistleblower Act
formerly required an employee to exhaust any administrative remedy.  In 1995, it was amended to require only that
an employee initiate a grievance. 
Rivera, 93 S.W.3d at 319. 
This change promotes a more liberal construction of the Act by focusing
less on whether the employee has complied with all of the procedural
requirements of any grievance process, and asking instead if the governmental
entity received the required notice.  See
Montgomery County Hosp. Dist., 181 S.W.3d at 850 (for purposes of the
Whistleblower Act, grievance is timely if filed within 90 days B even though employer=s policy imposed a five-day deadline,
and notice is sufficient if the employer is given fair notice of the employee=s desire to appeal and of the decision
from which it appeals).

C.  Did
Robison Provide The Required Notice?








Robison relies upon the following decisions to
support her argument that she complied with the Whistleblower Act=s notice requirement because she
discussed her termination with a supervisor and the hospital=s HR director:  Rivera, 93 S.W.3d 315; Upton County
v. Brown, 960 S.W.2d 808 (Tex. App.CEl
Paso 1997, no pet.); and Beiser v. Tomball Hosp. Auth., 902 S.W.2d 721
(Tex. App.CHouston
[1st Dist.]  1995, writ denied).  These decisions are distinguishable because
in each the employer received actual notice that its employee believed that he
or she had been fired in retaliation for reporting illegal activities.

In Rivera, the plaintiff filed a written
grievance.  93 S.W.3d at 318.  In Upton
 County, the plaintiff
met with a county commissioner to appeal his termination.  960 S.W.2d at 812.  In Beiser, the plaintiff=s attorney sent a demand letter to the
employer.  902 S.W.2d at 723.  In these cases, the terminated employee
specifically claimed that they had been terminated for reporting illegal
activities, and the employer then had the opportunity to correct its mistake
before facing litigation.

Robison contends that she met with her supervisors
and hospital administrators to make her complaint known.  But, she points to no evidence that at any
time prior to filing suit did she notify the hospital that she believed her
termination was the result of contacting the Texas Labor Board.  She unquestionably informed the hospital that
she disagreed with their decision to eliminate her position, and she provided
an alternative method for satisfying the budget cut.  However, Robison=s
communications would not have provided any reasonable employer with notice that
a potential whistleblower claim existed.

We agree with Robison that the hospital=s policy is unclear.  Its location in the handbook, the absence of
any reference to a grievance procedure in the termination section, and the
optional nature of the policy=s
language, all interfere with its comprehension in situations such as this.  That, however, does not eliminate the
Whistleblower Act=s notice
requirement.  Instead, the policy=s lack of clarity factors into the
analysis of what notice is sufficient.  See
Montgomery County Hosp. Dist., 181 S.W.3d at 854 (employee operating under
somewhat ambiguous policies had several options for providing the employer
notice of her potential whistleblower claim).








Because of this lack of clarity, we do not agree
with the hospital that Robison was required to file a written grievance to
preserve her rights to pursue a whistleblower claim.[6]  Medical Arts was entitled to notice and sixty
days to consider Robison=s
whistleblower claim.  Under the facts of
this case, Robison could have provided sufficient notice with a letter to her
supervisor, hospital administrators, the board, or with a demand letter from
her attorney.  Alternatively, she could
have raised her retaliation claim during her meeting with Butts.  But, simply asking the hospital to reconsider
her termination by making an alternative budgetary move is insufficient.  

We also agree with Robison that the hospital=s supervisory and administrative
personnel did not help by telling her that there was nothing she could do
because the decision was budgetary. 
This, however, is insufficient to create jurisdiction.  The Texas
Supreme Court has made clear that jurisdiction against a governmental entity
cannot be created by estoppel.  Wilmer-Hutchins
Indep. Sch. Dist., 51 S.W.3d 293. 
Moreover, courts have consistently refused to recognize a futility
exception to the Whistleblower Act=s
notice requirement.  See, e.g., Breaux,
205 F.3d at 163.

Because Robison provided no notice of her
whistleblower claim before filing suit, the trial court erred when it denied
the plea to the jurisdiction.  Medical
Arts=s issue
is sustained.

                                                                     V.
Holding

The trial court=s
order denying Medical Arts=s
plea to the jurisdiction is reversed, and judgment is rendered in Medical Arts=s favor on Robison=s whistleblower claim.

 

 

RICK STRANGE

JUSTICE

 

December 14, 2006

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.











[1]Tex. Gov=t Code Ann. ' 554.001-.010 (Vernon 2004).





[2]Because this case is before us strictly on
jurisdictional issues, whether any illegal activity took place is not in issue.





[3]Section 554.006(a).





[4]See Watley,
No. 11-04-00262-CV, 2006 WL 1451565 (initiating grievance is jurisdictional); Univ.
of Houston v. Barth, 178 S.W.3d 157, 161 (Tex. App.CHouston [1st Dist.] 2005, no pet.) (finding notice
requirement to be jurisdictional); City of Roman Forest v. Stockman, 141
S.W.3d 805, 809-10 (Tex. App.CBeaumont 2004, no pet.) (treating statutory
prerequisites as jurisdictional);  but
see Tex. Dep=t of Mental Health v. Olofsson, 59 S.W.3d 831, 832-33 (Tex. App.CAustin 2001, pet. dism=d) (claim
that suit was filed outside the time provided by the Whistleblower Act should
be raised by summary judgment and not plea to the jurisdiction); Castleberry
Indep. Sch. Dist. v. Doe, 35 S.W.3d 777, 782 (Tex. App.CFort Worth 2001, pet. dism=d w.o.j.) (same); Univ. of Houston v. Elthon, 9
S.W.3d 351 (Tex. App.CHouston [14th Dist.] 1999, pet. dism=d w.o.j.) (treating statutory time requirement for
filing a grievance as non-jurisdictional).





[5]See Act of May
25, 2005, 79th Leg., R.S., ch. 1150, 2005 Tex. Gen. Laws 3783.





[6]In Johnson v. City of Dublin, 46 S.W.3d 401, 405
(Tex. App.CEastland 2001, pet. denied), we held that the failure
to file a written grievance barred the plaintiff=s
whistleblower claim.  In that case, the
city=s grievance policy was clear, but its application to
the city=s chief of police was in question.  We held that plaintiff=s claim that the city council and city manager were
subjectively aware that he believed he was being terminated for reporting
violations being committed by city employees did not excuse compliance with the
city=s grievance policy which required a written
grievance.  Our analysis in that case,
and in this one, focused on the critical question:  Did the governmental entity receive the
statutorily required actual notice before being sued?