**Affirmed and Memorandum Opinion filed November 1, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00175-CV

---

### LYDIA ALCALA-GARCIA AND JANET SOLIS, Appellants

### V.

### CITY OF LA MARQUE, TEXAS, Appellee

---

**On Appeal from the 56th District Court
Galveston County, Texas
Trial Court Cause No. 10-CV-3018**

---

## M E M O R A N D U M   O P I N I O N

Appellants Lydia Alcala-Garcia and Janet Solis challenge the summary judgment granted in favor of appellee City of La Marque, Texas. In the two issues presented, we must consider whether the trial court had subject-matter jurisdiction to hear appellants' claims, and if so, whether a fact issue precluded the City's summary judgment. Both issues implicate requirements under the Texas Whistleblower Act. For the reasons that follow, we conclude that the trial court did not have subject-matter jurisdiction. Without reaching the other issue, we affirm the trial court's order dismissing appellants' claims.

## BACKGROUND

Before their termination in June 2010, appellants had worked for more than a year in municipal government. Garcia served as city clerk, and Solis served as court administrator and director of human resources. Both appellants performed their duties on behalf of city council, which was comprised of the mayor (Geraldine Sam) and four councilmembers (Deanie Barrett, Keith Bell, Larry Mann, and Connie Trube). Appellants also worked under the direction of the city manager, Eric Gage, but only city council had hiring and firing authority over their positions.

In February 2010, during an appearance before city council, Garcia testified that Gage had intentionally deleted emails which she believed were pertinent to an open records response. Garcia made the disclosure because the responsibility for completing open records requests normally fell to her, and she wanted to protect herself from liability upon any possible finding of wrongdoing. Her information was not well-received: Garcia was criticized for bringing the allegation, and Councilmember Barrett specifically accused her of having a hidden agenda.

In March 2010, when city council had taken no action on the matter, Garcia reported her suspicions of Gage's illegal activity to the district attorney's office. Solis accompanied her to the district attorney, and after being assured of the confidentiality of their report, they presented several additional complaints against Gage. Appellants claimed, for instance, that Gage had committed open meetings violations by transmitting information to only select members of city council. They also believed that Gage had committed payroll fraud; that he had failed to follow state law in the bidding process for a city contract; that he was making illegal gifts of government property to his friends; that he was using government resources to conduct a private real estate business; that he was bypassing city ordinances relating to the improvement of his home; and that he was directing the payment of claims from unauthorized insurance policies.

In June 2010, the city council summoned appellants to an executive session to discuss what had only been announced by public notice as certain "personnel matters." At

2

the meeting, appellants were accused of using city equipment to work on a political campaign. Garcia was also individually accused of failing to follow Gage's directive in obtaining prior approval before faxing items to the city attorney's office. The report to the district attorney's office was never raised or introduced at the council meeting. When appellants admitted to the political campaigning, a prohibited activity, council decided that action needed to be taken against them. In a three-to-one vote by Councilmembers Barrett, Mann, and Trube, it was decided that appellants should be immediately terminated from their positions. Mayor Sam opposed the terminations. Councilmember Bell was not in attendance.

Shortly after their terminations, appellants were advised by Councilmember Bell of a conversation he had had with Councilmember Mann. According to Bell's secondhand account, the true reason for the council's decision was that appellants had gone to the district attorney's office, and they "had to be out of city hall." Appellants, who had previously confided in both Bell and the mayor, contemplated the possibility of an administrative appeal. Mayor Sam informed them that the City had adopted a grievance procedure, but because any grievance would be heard by the same entity that had terminated their employment, she opined that it would be "nonsensical" for appellants to invoke it.

Appellants filed their original petition against the City in September 2010. In their live pleading, appellants alleged that they suffered retaliatory action in violation of the Texas Whistleblower Act. *See* Tex. Gov't Code Ann. §§ 554.001–.010 (West 2012). They also asserted an action under the Open Meetings Act, alleging that they were "illegally terminated" because the council gave inadequate public notice of the subjects to be discussed during the executive session. *See id.* §§ 551.001–.146.

The City generally denied the allegations and moved for summary judgment on three grounds. The City first argued that the trial court lacked jurisdiction over appellants' claims because appellants had not initiated an administrative appeal, which was a prerequisite to filing suit. The City argued next that there was no evidence of

retaliation because appellants had proffered no evidence that the councilmembers who voted in favor of termination had known about their report to the district attorney. The City finally argued that it provided adequate notice under the Open Meetings Act because it provided the topic of discussion with specific reference to appellants' positions.

Appellants filed a response setting forth several arguments explaining why the trial court had subject-matter jurisdiction over their claims. They contended that they were exempt employees, to whom the City's grievance procedures did not apply. In the alternative, appellants contended that holding them to the grievance requirement would have been futile because the reviewing body in the grievance process was city council, the same entity responsible for their termination. Appellants also contended that the grievance procedure should not apply to them because certain aspects of the procedure were unclear.

Regarding the City's second ground for summary judgment, appellants proffered evidence that city council knew of their report to the district attorney's office. Garcia produced excerpts from her deposition in which she testified to having confided in Mayor Sam and Councilmember Bell about her report to the district attorney. In another deposition, Solis testified that she personally discussed the report with Gage, Councilmember Barrett, and several additional employees in municipal government. Mayor Sam also provided an affidavit, attesting that city council had discussed appellants' report in a private meeting predating the executive session. Appellants' response did not address the City's argument concerning their action under the Open Meetings Act.

At a hearing on the motion for summary judgment, the City represented that there may exist a fact issue regarding council's knowledge of appellants' report to the district attorney's office. Nevertheless, the City argued that its motion should still be granted because the trial court was without jurisdiction to entertain appellants' whistleblower claims. After taking the motion under advisement, the trial court granted the City's motion, without specifying its reasons. This appeal followed.

## ISSUES PRESENTED

Appellants have limited our review to only two discrete issues. In their first issue, they contend that summary judgment was improper because a fact issue was raised regarding council's knowledge of their report. In their second issue, appellants contend that the trial court should not have dismissed their claims for lack of jurisdiction because the statutory prerequisite to suit did not apply to them. Appellants have not asked us to review the trial court's judgment pertaining to any alleged violations of the Open Meetings Act. Nor have they asked us to decide whether they "initiated" a grievance or appeal procedure within the meaning of the Whistleblower Act's prerequisite to suit. *See id.* § 554.006(a). With this posture in mind, we only address appellants' second issue, which is dispositive.

## ANALYSIS

### A.    Standard of Review

Subject-matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993); *Miller v. City of Houston*, 309 S.W.3d 681, 683 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Jurisdiction may not be conferred or taken away by consent or waiver, and its absence may be raised at any time, including in a motion for summary judgment. *Carroll v. Carroll*, 304 S.W.3d 366, 367 (Tex. 2010) (per curiam); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Whether a trial court has jurisdiction is a question of law that we review de novo. *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002); *Prairie View A&M Univ. v. Brooks*, 180 S.W.3d 694, 703 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

When a defendant challenges a trial court's subject-matter jurisdiction in a motion for summary judgment, the burden shifts to the plaintiff to allege facts affirmatively demonstrating that the trial court has subject-matter jurisdiction. *Lovato v. Austin Nursing Ctr., Inc.*, 113 S.W.3d 45, 51 (Tex. App.—Austin 2003), *aff'd*, 171 S.W.3d 845 (Tex.

5

2005); *see also Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004) (observing that the standard for reviewing pleas to the jurisdiction generally mirrors that for traditional summary judgments). We review the evidence of such jurisdictional facts in the light most favorable to the nonmovant, crediting evidence favorable to that party if a reasonable juror could, and disregarding contrary evidence unless a reasonable juror could not. *Miranda*, 133 S.W.3d at 228.

## B.    Applicable Law

The Whistleblower Act prohibits governmental entities on the state and local level from terminating public employees who, in good faith, report illegal activities committed by other public employees to appropriate law enforcement authorities. Tex. Gov't Code Ann. § 554.002. Employees who suffer retaliatory action for their good faith reporting can assert legal actions under the Act for various forms of relief. *Id.* § 554.003. Such relief is available because of the state's clear and unambiguous waiver of sovereign immunity. *Id.* § 554.0035.

Before suing under the Whistleblower Act, however, a claimant must first "initiate action under the grievance or appeal procedures" of her governmental employer. *Id.* § 554.006(a). After the claimant has initiated the grievance or appeal, the employer has sixty days to address the dispute through its administrative process before the claimant may file suit. *Id.* § 554.006(d). If a final decision is not rendered before the sixty-first day after the date the grievance procedures are initiated, the employee may elect to either exhaust her administrative remedies, or terminate the appeal process and file suit. *Id.*

The grievance process under Section 554.006 is "intended to afford the governmental entity an opportunity to correct its errors by resolving disputes before facing litigation, as the expense of litigation is borne ultimately by the public." *Fort Bend Indep. Sch. Dist. v. Rivera*, 93 S.W.3d 315, 318 (Tex. App.—Houston [14th Dist.] 2002, no pet.). The grievance process qualifies, in every sense of the term, as a "statutory prerequisite" under the Act. *See Prairie View A&M Univ. v. Chatha*, — S.W.3d —, No. 10-0353, 2012 WL 3800321, at *8 (Tex. Aug. 31, 2012) (discussing the components of a

6

statutory prerequisite); *Fort Bend Indep. Sch. Dist. v. Gayle*, 371 S.W.3d 391, 395 (Tex. App.—Houston [1st Dist.] 2012, pet. filed) (concluding that the grievance-initiation requirement is a jurisdictional prerequisite). "Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity." Tex. Gov't Code Ann. § 311.034. Therefore, in deciding whether the trial court had jurisdiction over appellants' claims, we must determine whether appellants satisfied the Act's grievance-initiation requirement. *Cf. State v. Lueck*, 290 S.W.3d 876, 885–86 (Tex. 2009) (dismissing whistleblower claim for lack of jurisdiction where claimant's action was based on report of regulatory non-compliance to division supervisor, rather than violation of law to appropriate law enforcement authority, as required by Act).

## C.    The City's Grievance Procedure

Apellants' employee handbook sets forth the following policy for grievances concerning a working condition or situation:

> An employee having a grievance relating to their employment shall first present their grievance to their immediate supervisor, either orally or in writing.
>
> a.    The supervisor receiving a grievance has a duty to listen with care to the employee, arrive at a full understanding of his point of view, and give the employee a clear and specific answer within five (5) days. The supervisor shall make a written report of the facts pertaining to the grievance and forward the report to their Department Head.
>
> b.    An employee who, after discussing a grievance with their immediate supervisor, is not satisfied with the outcome may appeal the grievance in writing to their Department Head within ten (10) days of the initial presentation of the grievance.
>
> c.    The Department Head shall schedule a hearing within ten (10) days at which time all of the facts surrounding the grievance will be presented. The Department Head shall provide a written decision to the grievant within five (5) days.
>
> d.    If the employee is not satisfied with the decision of their Department Head, the employee shall within ten (10) days of receiving the written decision, request from the Human Resource Director a hearing before the City Manager.

7

e.  The City Manager shall schedule a hearing within ten (10) days at which time all parties shall have the opportunity to present to the City Manager, all of the facts surrounding the grievance. The City Manager shall provide a final written response to the grievant within five (5) days.

f.  Employees who remain unsatisfied with their grievance after all steps in the grievance procedure have been exhausted may appeal as a final action to the City Council. A formal appeal must be in writing to the Human Resource Director to be placed on the City Council agenda.

The City argues that because this grievance procedure was never initiated, appellants have not complied with the Act's jurisdictional requirements. Appellants concede in their brief that they "did not go through the grievance process," but they contend, for various reasons, that the law should excuse their failure to invoke an administrative appeal. We are not persuaded by appellants' asserted reasons.

## 1.  Applicability of Grievance Procedure

In their first of many efforts to find an exception to the Act's strict grievance-initiation requirement, appellants argue that they should be excused because they were "explicitly informed by the City Office holders that the procedures did not apply to them." This argument has not been well-developed in the briefing, and, in any event, the Act does not contemplate any exceptions.

Appellants claim that they asked Mayor Sam and Councilmember Bell, their two trusted allies, about the availability of an appeal. Appellants allege in their brief that Bell directly "informed them that the Charter did not address an appeal process for appointed employees." We have not found any record support for this assertion. The citations appellants have provided do not substantiate Bell's purported statement in any way, nor have we uncovered any support for Bell's statement in our readings of the record. We do not address this part of appellants' argument any further, as it is their duty, not this court's, to pore through the record and provide appropriate citations in support of their claims. *See* Tex. R. App. P. 38.1(i).

8

Appellants' argument has more record support insofar as they claim to have relied on statements coming from Mayor Sam. In her affidavit, the mayor attested as follows: "With respect to the issue of these employees being able to grieve their termination; they could not under the terms of the Charter. The grievance was available to employees who were hourly employees and not Department heads. After the employees were terminated, I informed them of this fact."

The position advanced by the mayor does not comport with the grievance procedure articulated in the City's employee handbook, which was provided to both appellants. It is possible, given the language used in her affidavit, that the mayor could have based her analysis on a reading of the city charter, but appellants have not cited to any provisions in the charter, nor have they discussed the charter in their brief, and only excerpts of the charter appear in the record.

More importantly, the law is well-established that jurisdiction may not be conferred by estoppel. *Van Indep. Sch. Dist. v. McCarty*, 165 S.W.3d 351, 354 (Tex. 2005); *Gantt v. Gantt*, 208 S.W.3d 27, 29 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Accordingly, appellants may not claim to have satisfied the Act's jurisdictional requirements by availing themselves of the mayor's faulty or misleading advice. *See Wilmer-Hutchins Indep. Sch. Dist. v. Sullivan*, 51 S.W.3d 293, 294 (Tex. 2001) (per curiam) (holding that whistleblower claimant was not excused from initiating administrative remedies where employer's attorney failed to inform claimant of the availability of those remedies); *Daniel v. Dallas Indep. Sch. Dist.*, 351 S.W.2d 356, 358–59 (Tex. App.—El Paso 1961, writ ref'd n.r.e.) (holding that jurisdiction could not be conferred by estoppel where employer informed discharged claimant that "there was nothing more for him to do, and that as far as they were concerned the matter was concluded").

### 2. Futility of Appeal

Appellants also claim that they should be excused from the Act's prerequisite to suit because invoking the City's grievance procedure would have been "nonsensical."

Appellants reason that if the steps were followed as prescribed, their appeal would begin first with city council because council acted as both their immediate supervisor and their department head. Continuing with that process, if council's decision were unfavorable, the grievance procedure would have required appellants to appeal to the city manager, who technically speaking was organized beneath city council. If appellants were still unsatisfied with the city manager's decision, the grievance procedure would have required that they appeal back to city council. Appellants contend that this framework is nonsensical, and that an appeal would ultimately be futile because it was city council that made the decision to terminate.

This is not the first time in which an aggrieved employee has complained about the futility of administrative appeals in a whistleblower case. In *Montgomery County Hospital District v. Smith*, the Beaumont Court of Appeals confronted the same issue. *See* 181 S.W.3d 844, 853–54 (Tex. App.—Beaumont 2005, no pet.). The court in that case reasoned that even if a claimant were unsuccessful in the initial stages of an administrative appeal, by invoking the grievance procedure in the first place, the claimant would have preserved the opportunity to have her employer's decision reviewed by an impartial fact finder. *Id.* at 854. That position has been followed by other courts of appeals, and we join them in declining to graft a futility exception where the Act provides none. *See Med. Arts Hosp. v. Robison*, 216 S.W.3d 38, 44 (Tex. App.—Eastland 2006, no pet.); *accord Garrett v. Judson Indep. Sch. Dist.*, 299 Fed. App'x 337, 341–42 (5th Cir. 2008); *Breaux v. City of Garland*, 205 F.3d 150, 162–63 (5th Cir. 2000).

### 3. Exempt Status

Appellants also argue that they should be excused from failing to initiate a grievance procedure because they were "exempt employees." The City's employee handbook defines two types of employees. The term "employee" is defined generally as "any individual employed in the service of the City in a budgeted or authorized position." The handbook also makes provision for "employee, exempt," which is defined as "an

10

employee who is exempt from the Federal Wage and Hour Law as it relates to the payment of overtime as defined by Fair Labor Standard Act."

Appellants contend that the City's grievance procedure applies only to "employees," and that they should be excused from its process because they are more properly classified as "exempt employees." We disagree. By its own terms, exempt employees merely constitute a subclass of employees, the only difference relating to overtime pay. Even if appellants were exempt from federal laws pertaining to overtime pay, they were still "employees" to whom the grievance procedure generally applied.

### 4.    Notice to Employer

Appellants finally insist that their inquiry alone into the grievance procedure provided the City with sufficient notice under the Act. For authority, they cite only to *Vernagallo v. Freeman*, No. 14-99-00584-CV, 2000 WL 1357206 (Tex. App.—Houston [14th Dist.] Sept. 21, 2000, no pet.) (not designated for publication). As an unpublished opinion, *Vernagallo* has no precedential value. *See* Tex. R. App. P. 47.7(b). Even if it constituted binding authority, the case is factually distinguishable. In *Vernagallo*, this court decided that a whistleblower's claim would not be jurisdictionally barred, despite the claimant's failure to exhaust administrative remedies, if the grievance procedures were unclear or conflicting and the claimant timely notified the employer of the grievance. *See Vernagallo*, 2000 WL 1357206, at *3–4 (discussing two conflicting policies, one from the Harris County Personnel Regulations stating that "an individual may not file a grievance based upon his/her termination from employment," and another from the manual provided to Harris County Constables, Precinct Two, providing that "every employee receiving disciplinary action has the right to appeal that decision").

Although aspects of the City's grievance procedure may seem redundant when applied to the facts of this case, the procedure itself is not unclear, and appellants have not shown that it conflicts with any other applicable administrative policy. Moreover, unlike the claimant in *Vernagallo*, appellants did not provide notice that they were invoking the administrative appeal; they merely inquired into the availability of such an

11

appeal. We cannot say that the two acts accomplish the same thing—only when the appeal is invoked does the claimant actually provide the employer with an opportunity to resolve its error.

## CONCLUSION

Appellants were required by statute to initiate a grievance procedure before bringing suit on their whistleblower claims. On appeal, they have not argued that their actions constituted an initiation of the applicable grievance procedure. Rather, appellants have only urged us to adopt exceptions that would fundamentally rewrite the Whistleblower Act itself. We decline to create any exceptions, and conclude that appellants failed to satisfy the jurisdictional prerequisites of their claims. The trial court's judgment dismissing those claims is therefore affirmed.


/s/    Adele Hedges
Chief Justice


Panel consists of Chief Justice Hedges and Justices Brown and Busby.