**Affirmed in Part and Reversed and Remanded in Part and Majority and Dissenting Opinions filed May 12, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00097-CV

---

## VICKI WARD, Appellant

## V.

## LAMAR UNIVERSITY AND TEXAS STATE UNIVERSITY SYSTEM, Appellees

---

**On Appeal from the 172nd District Court
Jefferson County, Texas
Trial Court Cause No. E-194,323**

---

## M A J O R I T Y   O P I N I O N

Appellant Vicki Ward sued appellees Lamar University and the Texas State University System for retaliating against her in violation of the Texas Whistleblower Act. Appellees filed a plea to the jurisdiction. Subsequently, Ward filed an amended petition, adding a claim for a declaratory judgment that appellees violated several sections of the Texas Constitution. After a hearing, the trial court

issued an order dismissing Ward's claims under the Whistleblower Act based on the plea and dismissing her constitutional claims sua sponte.

In her first issue, Ward argues the trial court erred in dismissing her claims under the Whistleblower Act because her amended petition and testimony sufficed to defeat a plea to the jurisdiction. We hold the trial court erred in dismissing Ward's whistleblower claims against Lamar University because there is evidence that she met the Act's grievance requirement and that Lamar took an adverse personnel action against her. The court properly dismissed Ward's whistleblower claims against the Texas State University System, however, because there is no evidence it took such an action.

In her second issue, Ward asserts the trial court erred by dismissing her claims against Lamar and the System under the Declaratory Judgments Act and the Texas Constitution because no basis existed for the court's dismissal. As to Lamar, we agree that the trial court erred in dismissing these claims sua sponte. With respect to the System, however, we hold that one of these claims was properly dismissed on the same ground as the whistleblower claims: lack of evidence of an adverse personnel action. We affirm in part, reverse in part, and remand the case for further proceedings.

## BACKGROUND

Appellant Vicki Ward filed a petition alleging that appellees had violated the Texas Whistleblower Act by taking adverse personnel action against her after she reported in good faith a violation of law to an appropriate law enforcement authority. Tex. Gov't Code Ann. §§ 554.001, *et seq*. Appellees filed a plea to the jurisdiction, seeking dismissal of Ward's claims. Ward then filed an amended petition, adding a second cause of action. Specifically, Ward's amended petition

sought a declaratory judgment that appellees had violated Sections 3, 3a, 8, and 19 of Article One of the Texas Constitution.

To support her claims, Ward alleged the following facts in her amended petition. Ward worked as an Associate Vice President for Finance at Lamar University Beaumont. Lamar University is a part of the Texas State University System. Ward was responsible for Lamar's finance operations, including procurement. While reviewing payment requests, Ward noticed suspicious financial transactions within certain departments of Lamar. Ward reported her concerns to Lamar's Police Chief, Jason Goodrich. Over the next several months, an investigation was conducted. The investigation produced a report, co-authored by Ward, that documented the transactions. The report was forwarded to James Simmons, who was at that time President of Lamar.[1] Eventually, the report was leaked to a television station, and the station began running stories concerning the contents of the report.

Ward alleged that after the report was leaked, Simmons "indicated he was interested in hurting [her] as author of the report more than he was interested in correcting the corruption uncovered in the report." Ward lost the ability to approve and review procurement documents. When she asked Simmons about this limitation of her duties, he allegedly replied, "Stop looking at departments and their spending, [sic] you have caused enough trouble." Ward also alleged that she lost authority over her department. Priscilla Parsons was named Senior Associate Vice President of Finance. During a meeting, Simmons allegedly stated that Ward had no authority in the Finance Department.

---

[1] Simmons is no longer President of Lamar, though he remains employed by Lamar as a tenured professor.

Ward alleged that she then initiated an appeal to the Chancellor of the System as well as to Simmons and Dr. Cruse Melvin, whom Simmons had appointed as one of her superiors. No formal grievance or appeal policy was identified by any of the parties, either in their pleadings or at the hearing.

Ward subsequently received a phone call from Fernando Gomez, the Vice Chancellor of the System, informing her that her appeal had been received. During the conversation, he allegedly told her "she would have to go." Gomez said Ward would be given a severance package to resign. He told her he was an attorney and could help "settle things" because Ward was not a "good fit." He further told her that she was an employee at will. Ward asked Gomez if he was threatening to fire her. He replied that he was only an attorney and could not fire anyone. He repeated his severance package proposal, and Ward again asked Gomez if he was threatening to fire her. He said "no" but reiterated that Ward was an employee at will. Gomez said, "Remember, I can help you. If not, I will call HR and they will send you a letter." Ward responded that she could not make a decision at that point and did not understand why she was being threatened because she was merely safeguarding Lamar. Gomez ended the conversation by saying, "Well, I will be sending you a letter and contacting HR." He then hung up. It is undisputed that Ward was not terminated following this conversation and remains employed by Lamar as Associate Vice President for Finance.

During a hearing on appellees' plea to the jurisdiction, Ward testified that her former procurement responsibility had allowed her to identify the malfeasance. She also testified that the number of people under her supervision had been reduced. Ward had overseen between 45 and 50 employees, but after the report was filed, approximately 15 people were removed from her supervision. Furthermore, Parsons ran meetings outside Ward's presence, and Ward now had to

4

report to Parsons, whereas before Ward reported directly to the Vice President for Finance. Ward's job title remained the same, however, and her pay increased from $100,000 to $104,000.

Because the plea to the jurisdiction was filed before Ward's amended petition, it did not address Ward's constitutional claims. At the hearing on the plea, appellees' counsel declared that the court could dismiss the entirety of the complaint on its own motion for failing to allege a constitutional violation but offered to file another plea addressing Ward's constitutional claims if the court desired. The court did not respond to this offer at the hearing, and no motion or plea seeking dismissal of those claims appears in the record. Following the hearing, the trial court issued an order dismissing Ward's claims under the Texas Constitution sua sponte and granting appellees' plea to the jurisdiction as to Ward's claims under the Texas Whistleblower Act. This appeal followed.[2]

## ANALYSIS

### I. The trial court erred in dismissing Ward's whistleblower claims against Lamar but properly dismissed those claims against the System.

#### A. Standard of review

In her first issue, Ward contends the trial court erred in dismissing her claims under the Texas Whistleblower Act because she presented both allegations and evidence sufficient to defeat appellees' plea to the jurisdiction. If a governmental unit has immunity from suit, a trial court lacks subject-matter jurisdiction over a suit against the unit. *City of Houston v. Ranjel*, 407 S.W.3d

---

[2] Pursuant to its docket-equalization powers, the Supreme Court of Texas transferred this appeal from the Ninth Court of Appeals to this Court. *See* Tex. Gov't Code Ann. § 73.001 (West 2013). We must decide this case in accordance with the precedent of the Ninth Court of Appeals under principles of stare decisis if our decision otherwise would have been inconsistent with that court's precedent. *See* Tex. R. App. P. 41.3

5

880, 887 (Tex. App.—Houston [14th Dist.] 2013, no pet.). A challenge to a trial court's subject-matter jurisdiction may be asserted by a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). We review a trial court's decision on a plea to the jurisdiction de novo. *State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002).

A plaintiff has the burden to allege facts demonstrating jurisdiction, and we construe the pleadings liberally in the plaintiff's favor. *Miranda*, 133 S.W.3d at 226. When the governmental unit challenges the existence of jurisdictional facts, and the parties submit evidence relevant to the jurisdictional challenge, we must consider that evidence when necessary to resolve the jurisdictional issues raised. *Ranjel*, 407 S.W.3d at 887. The court must take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 228. If the evidence raises a fact question on jurisdiction, the trial court cannot grant the plea, and the issue must be resolved by the trier of fact. *Id.* at 227–28. On the other hand, if the evidence is undisputed or fails to raise a fact question, the trial court must rule on the plea as a matter of law. *Id.* at 228. This standard generally mirrors that of a summary judgment. *Id.*

### B.    Applicable law

Both in the trial court and on appeal, Lamar and the System advance several arguments to support the dismissal of Ward's whistleblower claims.[3] First, they contend that Ward failed to initiate a grievance procedure before filing suit as

---

[3] Because the plea to the jurisdiction did not challenge other elements of a whistleblower claim, such as Ward's status a public employee who in good faith reported a violation of law, the status of Lamar and the System as governmental entities, or the existence of a causal link between the report of illegal conduct and the identified personnel actions (*see City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 67 (Tex. 2000)), we do not address those issues.

6

required by the Whistleblower Act. On appeal, they submit an appeals policy and ask that we take judicial notice of it. Second, they contend Ward's identified personnel actions are not "materially adverse" as a matter of law. Third, they argue Ward's claims against the System fail because Lamar, not the System, was her employer during the relevant time period, and furthermore there is no evidence that the System took any adverse personnel action against Ward.

The Texas Whistleblower Act provides that a "state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." Tex. Gov't Code Ann. § 554.002(a) (West 2012). A "personnel action" is one that affects a public employee's compensation, promotion, demotion, transfer, work assignment, or performance evaluation. Tex. Gov't Code Ann. § 554.001(3) (West 2012).

An adverse personnel action is one that "would be likely to dissuade a reasonable, similarly situated worker from making a report under the Act." *Montgomery County v. Park*, 246 S.W.3d 610, 614 (Tex. 2007). The supreme court has explained that this objective materiality standard, which is derived from federal employment law, allows claims based on retaliatory actions "likely to deter" reporting of governmental violations of law while weeding out "petty slights" and "minor annoyances." *Id.* The standard also bars trivial claims resulting from a plaintiff's unusual subjective feelings, while allowing claims arising from the particular circumstances of the challenged action. *Id.* at 614–15. Nonexclusive factors to consider in determining materiality include whether the allegedly adverse personnel action negatively affected the employee's (1) prestige; (2) opportunity for advancement; (3) working conditions; (4) pay or income; or (5)

7

ability to obtain outside employment. *Id.* at 615. The presence or absence of any of these factors is not dispositive. *Id.* The effects of a challenged action must be considered as a whole and in light of all the circumstances, and an act that would be immaterial in some situations is material in others. *Id.*

The Act waives the employing entity's immunity from an employee's suit alleging a violation of the Act. Tex. Gov't Code Ann. § 554.0035 (West 2012). Before filing suit, however, the Act requires an employee to "initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action." Tex. Gov't Code Ann. § 554.006(a) (West 2012). The employee must initiate the grievance procedures within 90 days after the alleged violation occurred or was discovered by the employee through reasonable diligence. Tex. Gov't Code Ann. § 554.006(b) (West 2012). This provision affords the governmental entity an opportunity to correct its errors by resolving disputes before facing litigation, as the expense of litigation is borne ultimately by the public. *Fort Bend Indep. Sch. Dist. v. Rivera*, 93 S.W.3d 315, 318 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

An employee is not relieved of the requirement to initiate a grievance or appeal by the lack of a formal procedure. *Berry v. Bd. of Regents of Texas S. Univ.*, 116 S.W.3d 323, 325 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The Act, however, does not dictate what actions are required to 'initiate' the appeals process. *Moore v. Univ. of Houston-Clear Lake*, 165 S.W.3d 97, 102 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *see City of Austin v. Ender*, 30 S.W.3d 590, 594 (Tex. App.—Austin 2000, no pet.). The statute also does not require the use of particular words, nor require the employee to state that his grievance or

8

appeal is based on the Whistleblower Act. *Moore*, 165 S.W.3d at 102; *Ender*, 30 S.W.3d at 594.

In the absence of a standard created by an employee manual detailing the required contents of a public employee's grievance or appeal, the notice given to an employer must provide fair notice that the employee desires to appeal the employer's personnel decision and fair notice of the decision made by the employer from which the employee desires to appeal. *Montgomery County Hosp. Dist. v. Smith*, 181 S.W.3d 844, 850 (Tex. App.—Beaumont 2005, no pet.). By being given such a notice, the employer will be aware that its employee has appealed from its disciplinary decision and will know which of its employment decisions are being made the subject of its appeal process. *Id.*

**C.**      **There is a fact issue regarding whether Ward initiated a grievance as required by the Act.**

To support their contention that Ward failed to initiate the required grievance or appeal procedures before filing suit, Lamar and the System first present a policy that they contend details the steps Ward was required to take in order to initiate a grievance. They argue that we may take judicial notice of the policy on appeal despite their failure to introduce the policy in the trial court in support of their plea to the jurisdiction. By its express terms, however, this alleged policy does not apply to administrative staff members such as Ward. Accordingly, we need not decide whether this inapplicable policy is a proper subject for judicial notice.

Appellees also point to an affidavit—filed with their plea—of Bertha Fregia, Lamar's Vice President for Human Resources, in which she states that Ward never filed a grievance or appeal. Appellees contend this assertion is uncontroverted evidence of the existence of a grievance procedure and Ward's failure to comply.

9

But Ward's amended petition, which was filed after appellees' plea, asserts that she initiated an appeal to the Chancellor of the System, Simmons, and Dr. Cruse Melvin. Furthermore, Ward testified about her appeal and stated that in her appeal letter, which is not part of the record, she asked the Chancellor to intervene in Simmons' retaliatory acts. She argues that the complaints in her letter and the return phone call from System official Gomez suffice to fulfill the requirement to initiate an appeals process before filing suit.

The record lacks information regarding the relationship between the System and Lamar, so it is unclear whether addressing an appeal to the Chancellor of the System suffices to comply with the requirement that the employee provide notice to the employer. Given that Simmons—the subject of Ward's grievance—was president of Lamar, a letter to the System may have been the best informal avenue available to Ward to initiate a grievance. *See Upton County, Tex. v. Brown*, 960 S.W.2d 808, 813–14 (Tex. App.—El Paso 1997, no pet.) (holding in absence of formal procedure a county employee's phone call to the county commissioner sufficed to fulfill Whistleblower Act's requirement to initiate a grievance procedure before filing suit). In any event, appellees did not offer evidence that the Chancellor is an improper recipient of a grievance or appeal. Considering Ward's testimony regarding the letter to the System Chancellor and the phone call she received from a System official in response, we conclude there is some evidence that appellees had fair notice of Ward's desire to appeal her employer's personnel decision and fair notice of the decision made by the employer from which the employee desires to appeal. *Smith*, 181 S.W.3d at 850.

As noted above, Ward contended that she also directed her appeal to Lamar's then-President Simmons and to Dr. Cruse Melvin, who was operating as her direct superior at Lamar. "To the extent the steps in such a [grievance or

appeal] procedure are unclear, as in this case, an employee's request to ranking officials of the employer to invoke the procedure (*i.e.*, whatever it may be) can hardly be denied effect." *Berry*, 116 S.W.3d at 325. For these reasons, we conclude there is a fact issue regarding whether Ward initiated an appeal before filing suit, and therefore the plea cannot be sustained based on Ward's failure to satisfy the Act's grievance requirement.

**D.** **There is a fact issue regarding whether Lamar took materially adverse personnel action against Ward, but a lack of evidence that the System took such action.**

We next consider appellees' argument that the plea was properly granted because the personnel actions alleged by Ward are not materially adverse as a matter of law. In *City of El Paso v. Parsons*, a firefighter was transferred from his position at the training academy after he reported the fire chief's submission of false reports concerning employee continuing-education requirements. 353 S.W.3d 215, 220–21 (Tex. App.—El Paso 2011, no pet.). The firefighter lost his responsibility as training chief, and other firefighters were removed from his supervision. *Id.* at 21. He retained his job title, however, and received pay increases. *Id.* The court of appeals held the evidence legally sufficient for a jury to conclude the firefighter's transfer constituted an adverse personnel action. *Id.* at 228.

In her amended petition and testimony, Ward alleged that Lamar removed her procurement responsibility, 15 people from her supervision, and her authority over the department. While her pay and job title remained the same, as *Parsons* shows, such factors are not dispositive. *See also Harrison v. Corr. Corp. of Am.*, 476 F. App'x 40, 45 n.23 (5th Cir. 2012) (collecting Fifth Circuit cases acknowledging that lateral reassignment to a position with equal pay could amount to a materially adverse action in some circumstances); *Kessler v. Westchester*

*County Dep't of Soc. Servs.*, 461 F.3d 199, 202, 210 (7th Cir. 2006) (finding a fact issue where a transfer stripped employee of many of his earlier management responsibilities, even though the employee was never disciplined, suspended, or written up and his salary, benefits, and hours were not decreased). Moreover, she no longer reported directly to the Vice President for Finance; instead, she reported to the new Senior Associate Vice President, an individual with no previous finance experience. Such an action is some evidence that she lost job prestige. *See Gray v. City of Galveston*, No. 14-12-00183-CV, 2013 WL 2247386, at *9 (Tex. App.—Houston [14th Dist.] May 21, 2013, no pet.) (holding appellant's reassignment from a "command position" to an "investigative position," where he reported to an officer with a lower rank and no longer served as a "direct report" to the Chief of Police, supported a conclusion that appellant was transferred to a less prestigious position).

Moreover, Ward testified that she lost her procurement duties, which were the duties that had allowed her to discover the transactions she reported. Removing the very authority that allowed a whistleblower to find wrongdoing in the first place is some evidence of an action that would likely dissuade a reasonable, similarly situated worker from making a report under the Act. *See Park*, 246 S.W.3d 614–15. Under the circumstances, taking all of Ward's allegations as true, we hold the pleadings and testimony were sufficient to raise a fact question as to whether she suffered adverse employment actions at the hands of Lamar. *Miranda*, 133 S.W.3d at 227–28. The trial court thus erred in dismissing Ward's whistleblower claims against Lamar.

With respect to the System, however, the only adverse employment actions Ward alleges are the implied threats of termination she received during the phone call with Gomez. Ward was never terminated, however. Unfulfilled threats to fire

do not constitute actionable adverse employment decisions. *Elgaghil v. Tarrant County Junior Coll.*, 45 S.W.3d 133, 143 (Tex. App.—Houston [1st Dist.] 2000, pet. denied); *see also Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 531 (7th Cir. 2003) ("An unfulfilled threat, which results in no material harm, is not materially adverse.").[4]  Accordingly, we hold the trial court properly dismissed Ward's whistleblower claim against the System.  We therefore sustain Ward's first issue in part and overrule it in part.

## II.	The trial court erred in dismissing sua sponte appellant's claims against Lamar under the Declaratory Judgments Act and the Texas Constitution, but it properly dismissed one of those claims against the System.

In her second issue, Ward contends the trial court erred in dismissing sua sponte her claim under the Declaratory Judgments Act and the Texas Constitution because no ground existed for dismissal.  As noted above, Ward amended her petition after Lamar and the System filed their plea to the jurisdiction.  Ward's amended petition added allegations that, among other things, both Lamar and the System retaliated against her for exercising her right to free speech under the Texas Constitution.  Invoking the Declaratory Judgments Act, Ward seeks declarations including that appellees violated Article I, Section 8 of the Texas Constitution, as well as an injunction requiring appellees to restore her former job duties and refrain from violating her constitutional rights and retaliating against her.  Ward also alleges that appellees violated Article I, Sections 3, 3a, and 19 of the Texas Constitution, which guarantee equal rights, equality based on sex, and due course of law.

---

[4] Because Ward failed to allege an adverse employment action committed by the System, we need not consider appellees' argument that the Texas Whistleblower Act does not apply to the System because it was not the employing entity.

13

The Texas Constitution's Bill of Rights includes the following provision:

> Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press. In prosecutions for the publication of papers, investigating the conduct of officers, or men in public capacity, or when the matter published is proper for public information, the truth thereof may be given in evidence. And in all indictments for libels, the jury shall have the right to determine the law and the facts, under the direction of the court, as in other cases.

Tex. Const. art. I, § 8. Because this provision expressly guarantees an affirmative right to speak, the supreme court has held that it provides greater rights than the First Amendment to the Constitution of the United States in the context of prior restraints on speech, though it has not extended that holding to other contexts. *Compare Davenport v. Garcia*, 834 S.W.2d 4, 8–9 (Tex. 1992), *with Tex. Dep't of Transp. v. Barber*, 111 S.W.3d 86, 106 (Tex. 2003), *and Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 434–35 (Tex. 1998).

The trial court dismissed Ward's claims under the Declaratory Judgments Act and the Texas Constitution "[o]n its own motion," stating that Ward's petition "fail[s] to articulate facts which, if believed, would support such a claim." Ward argues that no legal grounds existed for the dismissal. We agree as to her claims against Lamar but disagree as to her free speech retaliation claim against the System.[5]

---

[5] Our dissenting colleague asserts that Ward's appeal does not challenge the trial court's dismissal of her claims under Article I, Sections 3, 3a, or 19 of the Texas Constitution, and therefore we are reversing on unassigned error. *Post*, at 3–9. We disagree. In her appellate brief, Ward argues that her "constitutional claims were hardly even addressed" by the plea to the jurisdiction. After noting that the order dismissing those claims was made on the trial court's own motion, Ward states that "the trial court should not have so moved." Ward also asserts that "[n]o ground existed for dismissal of [the constitutional] claims, and the trial court's *order should be reversed*." (emphasis added). Ward thus expressly asked our Court to reverse the

14

Although the trial court stated the ground for its ruling dismissing these claims, we may consider in the interest of judicial economy other grounds for dismissal that were preserved for review.[6] As discussed in the previous section, one of the grounds for dismissal raised in appellees' plea was that Ward did not suffer an adverse employment action. Thus, we consider whether this ground could provide a basis for dismissing Ward's constitutional claims. *See City of Dallas v. Turley*, 316 S.W.3d 762, 774 (Tex. App.—Dallas 2010, pet. denied) (analyzing whether grounds raised in plea to jurisdiction supported dismissal of claims added in amended petition filed after plea).

---

order dismissing her claims under the Declaratory Judgments Act sua sponte. Similarly, although the second issue in Ward's brief mentions her free speech right, it also asks broadly "Was the trial court's dismissal of her claim erroneous?" Her argument heading regarding this issue shows that the claim to which she refers is her "claim for declaratory judgment under the Texas Constitution." The discussion following the heading also refers to her claim under the Declaratory Judgments Act, not solely to the subsidiary free-speech claim.

Texas Rule of Appellate Procedure 38.1(f) provides that "[t]he statement of an issue or point will be treated as covering every subsidiary question that is fairly included." Tex. R. App. P. 38.1(f). "[I]t is our practice to construe liberally points of error in order to obtain a just, fair and equitable adjudication of the rights of the litigants." *Speck v. First Evangelical Lutheran Church of Hous.*, 235 S.W.3d 811, 819 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989)); *see also* Tex. R. App. P. 38.9 ("Because briefs are meant to acquaint the court with the issues in a case and to present argument that will enable the court to decide the case, substantial compliance with this rule is sufficient . . . ."); *Tex. Mexican Ry. Co. v. Bouchet*, 963 S.W.2d 52, 54 (Tex. 1998) ("Courts should liberally construe briefing rules."); *Anderson v. Gilbert*, 897 S.W.2d 783, 784 (Tex. 1995) (same). Our Court routinely follows this practice, and we conclude it is appropriate to do so here. *E.g., Thu Binh Si Ho v. Saigon Nat. Bank*, 438 S.W.3d 871, 873 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("We must construe appellate briefs reasonably, yet liberally, so that the right to appellate review is not lost by waiver.") (citing *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (per curiam)).

[6] *Cf. Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996) (holding in summary judgment context that appellate court "may consider other grounds that the movant preserved for review and trial court did not rule on in the interest of judicial economy"); *City of Mont Belvieu v. Enter. Prods. Operating, LP*, 222 S.W.3d 515, 519 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (limiting appellate review of order sustaining plea to jurisdiction to matters presented to trial court); *Britton v. Tex. Dep't of Crim. Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (looking to summary judgment practice for guidance in reviewing pleas to jurisdiction based on multiple grounds).

In their briefs on appeal, both parties look to federal decisions addressing the elements of a First Amendment retaliation claim for guidance on the elements of Ward's free speech retaliation claim under the Texas Constitution. One of those federal elements is an adverse employment decision. *See, e.g., Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011). Because the parties have not argued that the elements of the claim differ under the Texas Constitution, we will analyze Ward's claim using the federal requirement of an adverse employment decision. *See Price v. Tex. Alcoholic Bev. Comm'n*, No. 01-12-1164-CV, 2014 WL 3408696, at *5 (Tex. App.—Houston [1st Dist.] July 10, 2014, pet. denied) (mem. op.).

As we explained in the previous section, the pleadings and testimony are sufficient to raise a fact question regarding whether Ward suffered an adverse employment decision at the hands of Lamar, but Ward has not alleged any actionable adverse employment decision by the System. Accordingly, we affirm the trial court's dismissal of Ward's declaratory judgment claim against the System under Article I, Section 8 of the Texas Constitution. The parties do not address whether any ground raised in the plea (including the lack of an adverse employment decision) would defeat Ward's other constitutional claims, and we therefore do not consider that issue.

Because appellees' plea to the jurisdiction does not support dismissal of all of Ward's constitutional claims, we next examine the trial court's stated non-jurisdictional reason for dismissing those claims. The trial court's order specifies that the dismissal was for failure to plead facts supporting the claims.[7] But there

---

[7] Our dissenting colleague contends the trial court's order is "subject to more than one interpretation," and that the court may have dismissed Ward's constitutional claims based on a conclusion that it lacked jurisdiction over the claims. *Post*, at 3 n.1. We disagree that the order may be interpreted in this manner. The trial court stated that the "claims under the Texas Constitution contained in the Amended Petition fail to articulate facts which, if believed, would support such a claim." In other words, the trial court concluded that Ward's petition failed to

was no motion or other procedural vehicle available to the trial court authorizing it to dismiss these claims, and neither the trial court nor appellees identify any authority for dismissing a claim sua sponte on this basis. *Cf.* Tex. R. Civ. P. 91a.1 (requiring motion to dismiss cause of action on the grounds that it has no basis in law or fact); *Porras v. Jefferson*, 409 S.W.3d 804, 807 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("Inherent power does not permit a trial court to dismiss a party's claims on the merits without a pending motion.").

In the absence of such authority, courts should rely on the adversary system of justice, which depends on the parties to frame the issues for decision and assigns to courts the role of neutral arbiter of the matters that the parties present. *Greenlaw v. United States*, 554 U.S. 237, 243 (2008).[8] One rationale for this system is that the parties and their counsel usually know far better than the courts what is best for them, and thus they are responsible for advancing the facts and arguments entitling them to relief. *Id.* at 244.[9] Resolving disputes only on grounds raised by the parties also serves judicial economy,[10] keeps courts within their

---

state a claim, which is not the same as a failure of jurisdiction. *E.g., Dubai Petrol. Co. v. Kazi*, 12 S.W.3d 71, 75–77 (Tex. 2000). The trial court did not say that the petition failed to allege facts demonstrating the court's subject-matter jurisdiction, nor did it say why any such failure could not be remedied by affording Ward an opportunity to amend. *Cf. Miranda*, 133 S.W.3d at 226–27.

[8] *See also United States v. Burke*, 504 U.S. 229, 246 (1992) (Scalia, J., concurring in the judgment) ("The rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system from the inquisitorial one"); *McNeil v. Wisconsin*, 501 U.S. 171, 181 n.2 (1991) ("What makes a system [of justice] adversarial rather than inquisitorial is . . . the presence of a judge who does not (as an inquisitor does) conduct the factual and legal investigation himself, but instead decides on the basis of facts and arguments pro and con adduced by the parties.").

[9] *See also Castro v. United States*, 540 U.S. 375, 386 (Scalia, J., concurring in part and concurring in judgment); *Dennis v. United States,* 384 U.S. 855, 875 (1966) ("In our adversary system, it is enough for judges to judge. The determination of what may be useful to [a party] can properly and effectively be made only by an advocate.").

[10] *See Martinez v. State*, 91 S.W.3d 331, 336 n.12 (Tex. Crim. App. 2002).

constitutionally-assigned role as impartial and "neutral arbiter[s]," *id.* at 243,[11] and enables courts to make well-informed decisions based on full adversary presentation and testing of the arguments on either side of the issue at hand.

The parties have not addressed—either in the trial court or on appeal—whether Texas courts recognize the causes of action pleaded by Ward, nor have they addressed whether appellees are immune from suit on most of those causes of action.[12] The trial court should have allowed the parties to develop these issues through the adversary process; it erred by dismissing Ward's remaining constitutional causes of action sua sponte without a legal basis for doing so.[13] We

[11] *See also Greenlaw*, 554 U.S. at 244 ("'[Courts] do not, or should not, sally forth each day looking for wrongs to right. We wait for the cases to come to us, and when they do we normally decide only questions presented by the parties.'" (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (R. Arnold, J., concurring in denial of reh'g en banc)); *Smith v. Horn*, 120 F.3d 400, 409 (3d Cir. 1997) (explaining that when courts decide cases on grounds they raise sua sponte, they "come dangerously close to acting as advocates for [a party] rather than as impartial magistrates"). The Due Process Clause of the Federal Constitution and the Due Course of Law Clause of the Texas Constitution require judges to be neutral and detached. U.S. Const. amend. V; Tex. Const. art. I, § 19; Tex. Const. art. I, § 13; *see Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 617–18 (1993); *Earley v. State,* 855 S.W.2d 260, 262 (Tex. App.—Corpus Christi 1993, no pet.).

[12] We are aware that courts have allowed public employees to sue their employers for damages under 42 U.S.C. § 1983 when the employees suffer adverse employment consequences for exercising their First Amendment right to speak on matters of public concern. *E.g., Connick v. Myers*, 461 U.S. 138 (1983); *Baker v. Gregg County*, 33 S.W.3d 72, 79 (Tex. App.—Texarkana 2000, pet. dism'd). But Ward has not sued under section 1983, Texas has no comparable state statute, and there is no implied private right of action for damages arising under the free speech provision of the Texas Constitution. *See City of Beaumont v. Bouillion*, 896 S.W.2d 143, 147 (Tex. 1995). The trial court and the parties have not addressed whether injunctive relief is available in this circumstance to remedy violations of the Texas Constitution, *cf. City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007) (per curiam), or whether appellees' sovereign immunity is waived in this circumstance under the Declaratory Judgments Act. *Cf. City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009) ("[Under the Declaratory Judgments Act], the governmental entities themselves—as opposed to their officers in their official capacity—remain immune from suit."). We therefore do not decide those questions here.

[13] Our dissenting colleague contends that because the parties have not briefed on appeal the merits of whether Ward has stated declaratory judgment claims under Article I, Sections 3, 3a, and 19, it is unfair and unwise for us to address those claims. *Post*, at 4–9 & n.11. But we

sustain Ward's second issue in part and, with one exception, we reverse the trial court's dismissal of her claims against Lamar and the System under the Declaratory Judgments Act and the Texas Constitution. We affirm the dismissal of Ward's free speech retaliation claim against the System under the Declaratory Judgments Act and Article I, Section 8 of the Texas Constitution.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's dismissal of Ward's whistleblower claims and her free speech retaliation claim against the Texas State University System, reverse the trial court's dismissal of Ward's whistleblower claims against Lamar University and the trial court's sua sponte dismissal of Ward's remaining constitutional claims against both Lamar and the System, and remand the case to the trial court for further proceedings consistent with this opinion.


/s/       J. Brett Busby
                Justice


Panel consists of Chief Justice Frost and Justices Christopher and Busby (Frost, C.J., dissenting).

---

are not addressing the merits of those claims and holding that Ward pled sufficient facts to support them. Instead, we are reversing the trial court's decision to dismiss those claims without allowing the parties to take the lead in addressing them in the trial court. As discussed in footnote 5 above, Ward's brief gives fair notice that she is complaining of the latter error.