In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-25-00265-CV
_____

CITY OF MONTGOMERY, Appellant

V.

DAVID MCCORQUODALE, Appellee

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 24-11-18479

## MEMORANDUM OPINION

The City of Montgomery ("the City") appeals from the trial court's order denying the City's plea to the jurisdiction. David McCorquodale, the City's former Assistant City Administrator and Planning/Development Director, filed a wrongful termination suit against the City, asserting claims under the Texas Whistleblower's Act. *See* Tex. Gov't Code Ann. §§ 554.001-010 (the "Act"). In one appellate issue, the City argues the trial court erred in denying its plea because McCorquodale failed to raise a genuine issue of material fact on whether he initiated a grievance before

filing suit as required by the Act. *See id.* § 554.006. For the reasons explained below, we conclude that McCorquodale failed to raise a fact question as to whether he "initiate[d] action under the [City's] grievance or appeal procedures[.]" *Id.* § 554.006(a). We reverse the trial court's order denying the plea to the jurisdiction, and we render a dismissal of McCorquodale's claims against the City for lack of jurisdiction.

Background

On November 25, 2024, McCorquodale filed Plaintiff's Original Petition against the City after the City allegedly terminated his employment as Assistant City Administrator and Planning/Development Director in retaliation for McCorquodale's reporting of the police chief's "trying to pass a fraudulent employment agreement that contradicted his actual signed hiring documents off as legitimate in order to obtain more benefits and a higher salary." According to the petition, McCorquodale reported that the City's police chief had engaged in fraudulent activity. McCorquodale reported the alleged fraud to the City Attorney and later to the City Administrator, who recommended McCorquodale report it to the District Attorney's Public Integrity Section. McCorquodale informed the City Attorney and the City Administrator that he submitted the alleged fraud to the DA, and after reporting it, the City's mayor allegedly verbally attacked McCorquodale, targeted him during public meetings, and made false accusations against

2

McCorquodale to have him terminated. In McCorquodale's petition, he alleges that on November 18, 2024, the City Council voted to immediately terminate him and to terminate the City Administrator, and they were provided no reason for their termination. McCorquodale alleges the City intentionally violated the Act by retaliating against him and terminating his employment for reporting the police chief's illegal behavior. McCorquodale seeks monetary damages, including lost earnings, lost benefits, punitive damages, mental anguish, and attorney's fees.

The City filed Defendant's Original Answer, generally denying McCorquodale's allegations and asserting the defense of governmental immunity "except and to the extent this cause of action fits within the Texas Whistleblower Act, Tex. Gov't Code Chap[ter] 554." The City's Answer alleges that McCorquodale's employment was terminated for non-retaliatory reasons "having nothing to do with his alleged exercise of speech that he claims was protected by the Texas Whistleblower Act."

The City filed a Plea to the Jurisdiction, moving to dismiss McCorquodale's Whistleblower claim for want of subject-matter jurisdiction because he failed to "'initiate [the City's] grievance or appeal procedures'" required by section 554.006 of the Texas Government Code. According to the City, McCorquodale was required by section 6.16 of the City's Policies & Procedures Manual to submit a written grievance and appeal his termination to the City Council, and the City Administrator

would then either review the Council's recommendation and act accordingly, or would carry out the binding decision of Council with submittal to the Mayor or City Attorney within five working days of the decision or alleged incident. The City maintains that McCorquodale did not submit a grievance to the Council, the acting City Administrator, Human Resources, or the City Attorney within ninety days of his termination, and therefore, he failed to comply with section 554.006 of the Act, his claim is jurisdictionally barred, and his suit should be dismissed with prejudice for want of subject-matter jurisdiction. The City contends that the fact that the City Council terminated McCorquodale's employment does not excuse his failure to submit a grievance pertaining to his termination. In support of its Plea, the City attached a Declaration of Ruby Beaven, the City Secretary. The following exhibits are attached to her Declaration: McCorquodale's acknowledgement that he received and he had read the City's Policies & Procedures Manual, the City of Montgomery Policies & Procedures Manual, minutes from the November 18, 2024 City Council Special Meeting when McCorquodale's employment was terminated by vote of the City Council, and an April 10, 2024 letter from McCorquodale to the City Administrator regarding a different matter with an email acknowledging the receipt of the letter.

McCorquodale filed his Response to Defendant's Plea to the Jurisdiction, arguing that the City's grievance procedure states that it is a discretionary policy,

4

and he claims that when he attempted to file a grievance with the City, he was told that the policy did not apply to actions taken by City Council and that he was not required to follow the policy because he was no longer an employee.[1] According to McCorquodale, he has established a prima facie case under the Texas Whistleblower Act by showing that he reported a violation of law in good faith to an appropriate legal authority, that he was in turn retaliated against and terminated, and the retaliation would not have occurred but for his protected activity. McCorquodale asserts that he took steps to initiate the grievance process, but his efforts were intentionally frustrated by the City. He argues that because he has met his jurisdictional requirements and satisfied his prima facie case, the City's sovereign immunity has been waived, and the trial court must deny the City's Plea to the Jurisdiction. In support of his Response, McCorquodale attached his affidavit, his spouse's affidavit, and a copy of section 6.16 of the City's Policies & Procedures Manual.

The trial court denied the City's plea to the jurisdiction and this interlocutory appeal followed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (authorizing

---

[1] As explained later herein, McCorquodale's own affidavit establishes that his "attempt" to file a grievance and the alleged resulting conversation that led him to believe that the City's grievance procedures were inapplicable to him, as well as his belief that his efforts to initiate the grievance process were "intentionally frustrated" by the City, relate to a different matter that occurred months before the City Council terminated McCorquodale's employment.

interlocutory appeal from the grant or denial of a governmental unit's plea to the jurisdiction).

Standard of Review and Governmental Immunity

We review de novo a trial court's disposition of a plea to the jurisdiction. *See City of Houston v. Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 575 (Tex. 2018); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We focus first on the plaintiff's petition to determine whether the facts that were pleaded affirmatively demonstrate that subject matter jurisdiction exists. *Miranda*, 133 S.W.3d at 226. We construe the pleadings liberally in favor of the plaintiff. *Id.* If the plaintiff has not affirmatively pleaded facts to support jurisdiction, the matter is one of pleading sufficiency, and the court should provide the plaintiff with the opportunity to amend its pleadings to cure jurisdictional defects. *Id.* at 226-27.

"Sovereign immunity—usually called governmental immunity when referring to political subdivisions—protects governmental entities against suits and legal liabilities." *Hillman v. Nueces Cnty.*, 579 S.W.3d 354, 357 (Tex. 2019) (citation omitted). Governmental "'immunity from suit defeats a trial court's subject matter jurisdiction.'" *Id.* at 364 (quoting *Miranda*, 133 S.W.3d at 225). Governmental units are immune from suits unless the state consents. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 n.15 (Tex. 2018) (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012); *Miranda*, 133 S.W.3d at 224).

6

Immunity from suit may be asserted through a plea to the jurisdiction that challenges the pleadings, the existence of jurisdictional facts, or both. *Alamo Heights*, 544 S.W.3d at 770. If a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Miranda*, 133 S.W.3d at 227; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). When a governmental unit challenges the existence of jurisdictional facts with supporting evidence, our standard of review mirrors that of a traditional summary judgment. *See Alamo Heights*, 544 S.W.3d at 771; *Miranda*, 133 S.W.3d at 228; *see also* Tex. R. Civ. P. 166a(c). The burden is on the governmental unit to present evidence to support its plea. *Miranda*, 133 S.W.3d at 228. If the governmental unit meets its initial burden, the burden then shifts to the plaintiff to show that a disputed material fact exists regarding the jurisdictional issue. *Id.* We take as true all evidence that is favorable to the plaintiff and indulge every reasonable inference, resolving any doubts in the plaintiff's favor. *Id.* If the evidence creates a genuine issue of material fact, that issue should be resolved by the fact finder. *Id.* at 227-28. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, however, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. When a trial court does not make findings of fact and conclusions of law, we will affirm the trial court's order denying the plea to the jurisdiction if it can be

7

upheld on any legal theory that finds support in the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

Texas Whistleblower Act

The Texas Whistleblower Act provides that a "state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." Tex. Gov't Code Ann. § 554.002(a). The Act expressly waives the employing entity's immunity from an employee's suit alleging a violation of the Act. *Id.* § 554.0035. That said, Section 554.005 requires an employee seeking relief under the Whistleblower Act to file suit no later than the 90th day after the date on which the alleged violation (1) occurred or (2) was discovered by the employee through reasonable diligence. *See id.* § 554.005. Section 554.006(a) expressly requires that a public employee "must initiate action under the grievance or appeal procedures" of the employing governmental entity before filing suit. *Id.* § 554.006(a). The employee must initiate action under the employer's grievance or appeal procedures within 90 days after the date the alleged violation occurred, and the governmental entity then is allowed 60 days to resolve the grievance before suit is filed. *Id.* § 554.006(b)-(d). Section 554.006(a) is a statutory jurisdictional prerequisite to suit. The Texas Supreme Court, in *University of Texas*

8

*Medical Branch at Galveston v. Barrett*, 159 S.W.3d 631, 632 (Tex. 2005), stated, "Before suing under the Texas Whistleblower Act, a public employee must timely initiate his employer's grievance or appeal procedures relating to employee discipline." This Court has also previously addressed this issue. *Montgomery Cnty. Hosp. Dist. v. Smith*, 181 S.W.3d 844, 849 (Tex. App.—Beaumont 2005, no pet.) (citing *Barrett* and *Univ. of Tex. Med. Branch at Galveston v. Savoy*, 86 S.W.3d 782, 785 (Tex. App.—Beaumont 2002, pet denied)). *See also* Tex. Gov't Code Ann. § 311.034 ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."); *Tex. A&M Univ. Dep't of Transp. v. Reeves*, 708 S.W.3d 312, 318 (Tex. App.—Austin 2025, no pet.) (Section 554.006 makes initiating a grievance a statutory prerequisite to suit, and this statutory requirement is jurisdictional).

Analysis

In one appellate issue, the City argues the trial court erred in denying its plea because McCorquodale failed to raise a genuine issue of material fact regarding whether he initiated a grievance before filing suit as required by section 554.006 of the Act. *See* Tex. Gov't Code Ann. § 554.006. The City argues that McCorquodale did not initiate a grievance as required by the Act, and section 6.16 of the City's policy manual contains the process that allows an employee to appeal a disciplinary action. The City's manual provides the process to be followed: the employee submits

9

a written grievance to the employee's Department Director; the employee can appeal from that decision to the City Administrator by submitting the written appeal to the City's Human Resources official; the City's Human Resources official will notify the employee of the date, time, and place of the appeal hearing, which will be attended by the Department Director administering the discipline; the City Administrator renders a decision to the employee, the Department Director, and the City's Human Resources official; and the City Administrator's decision may be appealed to the City Council. The City argues that McCorquodale's allegations in his Response to the City's Plea were not supported by the evidence he attached to his Response. According to the City, McCorquodale admits in his affidavit that he did not initiate a grievance. The City argues that although he asserts in his Response to the City's Plea that the City intentionally frustrated his attempt to initiate a grievance, no evidence supports that assertion. The City disagrees with McCorquodale that he should be excused from filing a grievance because he had "no one to appeal to" because the City Administrator had also been fired. The City argues that its grievance policy allows an employee to appeal decisions resulting in termination to the City Council and that the City Council can issue its own binding ruling, and McCorquodale's mistaken belief about what the policy allows does not excuse him from notifying the City of his grievance. The City contends that, even if the City's grievance procedure was unclear or inapplicable, McCorquodale was still

10

required by statute to provide fair notice of his Whistleblower claim and his desire to appeal his termination. The City further argues that discretionary grievance language within its policy procedure that says an employee "may" file a grievance does not relieve McCorquodale from the Act's mandatory requirement that an employee "must" initiate a grievance action under the governmental unit's grievance or appeal procedures.

McCorquodale argues that when he reported the police chief for suspected fraudulent behavior, the City retaliated against McCorquodale by terminating his employment without providing a reason. According to McCorquodale, he attempted to file a grievance, but the City told him that his termination was not subject to the grievance process and that nothing could be done. McCorquodale argues that after he was fired, "the City intentionally frustrated McCorquodale's efforts to initiate the grievance process and [the City] is now attempting to punish him for being unable to file the very grievance that [the City] itself refused to accept." McCorquodale also argues that the City's manual provides that filing a grievance is not mandatory, and that, because the person he was to have submitted the grievance to under the City's grievance procedures was also terminated, he did not know where or with whom to file the grievance.

In its Reply Brief, the City restates its prior arguments and expressly disagrees with the allegations in McCorquodale's appellate brief. The City argues that despite

McCorquodale's claim in his appellate brief that the conversation with Mayor Countryman amounted to "steps to initiate a grievance" of his termination, McCorquodale's affidavit states that the context of the alleged conversation he had with the Mayor was something that occurred prior to his termination. According to the City, the only evidence McCorquodale presented in support of his "attempt" to file a grievance is what he states in his affidavit, which clearly shows the alleged conversation he says he had with the Mayor was not linked to his termination by the City Council. The City argues that the allegations in McCorquodale's appellate brief are either contradicted or unsupported by the evidence. The City emphasizes that McCorquodale has presented no evidence that he gave the City notice that McCorquodale believed his termination by the City Council violated the Act, and he has presented no evidence to support his contention that the City intentionally frustrated any attempt to grieve his termination.

First, we must determine whether McCorquodale affirmatively pleaded facts demonstrating that subject matter jurisdiction exists. *See City of Houston*, 549 S.W.3d at 575; *Miranda*, 133 S.W.3d at 226. McCorquodale alleges the following in his petition: that he was employed as the City's Assistant City Administrator and Planning/Development Director; after he reported the City's police chief's fraudulent conduct to the City Attorney, the City Administrator, and the District Attorney's Public Integrity Section, the City Council terminated McCorquodale's

12

employment without reason; he was engaged in a protected activity when he made the report; the City retaliated against him by terminating his employment in violation of the Act; there is a causal connection between his protected activity and the adverse employment action; the City's reasons for its retaliatory conduct are merely pretext for the retaliation; and he suffered damages as a result of the City's unlawful conduct.

Immunity from suit may be asserted through a plea to the jurisdiction that challenges the pleadings, the existence of jurisdictional facts, or both. *Alamo Heights*, 544 S.W.3d at 770. Here, the City challenges the existence of jurisdictional facts—whether McCorquodale initiated a grievance before filing suit as required by section 554.006 of the Act—and the trial court was required to consider evidence when necessary to resolve the jurisdictional issue. *See Miranda*, 133 S.W.3d at 227; *Blue*, 34 S.W.3d at 555. The City had the burden to present evidence to support its plea. *See Miranda*, 133 S.W.3d at 228. In support of its plea, the City attached the Declaration of Ruby Beaven, the City Secretary and the person responsible for the care and maintenance of all city records, wherein she states:

> [] Documents in David McCorquodale ("McCorquodale")'s personnel file include[s] the Personnel Action Form, Bates Marked CITY.0221, that shows he began employment with the City as Montgomery's Assistant City Administrator on October 10, 2018. Attached as Exhibit A is a true and correct copy of the Employment Acknowledgment, signed by McCorquodale, which acknowledged that he received a copy of the City's Policies and Procedures Manual and

13



was aware of and understood its contents and that he also acknowledged that his employment was at will.

[] Attached as Exhibit B is a true and correct copy of the City of Montgomery's Policies and Procedures Manual that was in effect during Mr. McCorquodale's employment.

[] McCorquodale served as the Assistant City Administrator under Gary Palmer, the City Administrator, who was under contract with the City. When Palmer's contract was terminated by the City Council on November 18, 2024, the Council also voted to terminate McCorquodale's employment by a 3-to-1 vote, at a special meeting of the Council held on November 18, 2024. Attached as Exhibit C is a true and correct copy of the minutes of the City of Montgomery's November 18, 2024 special meeting of the City Council.

[] Kept in the usual course of business in the City's personnel files are all written grievances filed by city employees under Section 6.16 of the Personnel Policy. If an employee files a grievance, the document is filed in the employee's personnel file. Attached as Exhibit D is a prior grievance that Mr. McCorquodale filed on another issue on April 10, 2024, which shows that he was aware of the City's grievance policy. I have conducted a careful review of Mr. McCorquodale's personnel file, and such search shows that no written grievance was submitted by him in connection with the termination of his employment. He did not submit any appeal or grievance to me.

[] My name is Ruby Beaven, and I am an employee of the following governmental agency: City of Montgomery. I am executing this declaration as part of my assigned duties and responsibilities. I declare under penalty of perjury that the foregoing is true and correct.

Attached as Exhibit A to Beaven's Declaration is a "City of Montgomery Policies & Procedures Manual Employee Acknowledgements" form signed by McCorquodale on October 10, 2018, acknowledging that he had received the City's Policies & Procedures Manual and that he understands that it is his responsibility to

14

read and understand its contents. Attached as Exhibit B to Beaven's Declaration is a copy of the City's Policies & Procedures Manual, which includes section 6.16 ("Grievance and Appeal Guidelines") which provides, in pertinent part, the following:

> GRIEVANCE REVIEW BY DEPARTMENT
> DIRECTOR/SUPERVISOR
> An Employee may submit a written response to any formal disciplinary action or perceived grievance within 5 working days to his/her Department Director. The Department Director, after reviewing the written response from the Employee, may withdraw the disciplinary action at his/her discretion. If the disciplinary action is upheld, the Employee's written response will be included in the documentation in the personnel file.
>
> APPEAL TO CITY ADMINISTRATOR PROCEDURES
> Regular Full-Time and Part-Time Employees who are suspended, demoted or discharged (terminated) from City employment, may appeal the decision in accordance with the following rules. The following appeal procedure is discretionary and in no way negates the at-will status of City Employees.
>
> Appeal Request/Grievance: An Employee who has received a suspension, demotion or has been terminated from employment has 5 business days from receipt of such action to request an appeal. Such appeal is made in writing to the City's Human Resources Official and must state the grounds for the appeal. The City Administrator will respond within ten working days to the Employee.
>
> Scheduling of Appeal/Grievance Hearing: The City's Human Resources Official will notify the Employee of the date, time and place of the appeal. The Employee will be given at least 48 hours notice of the appeal. The purpose of the appeal is to provide an opportunity for the Employee to present any information that may have a bearing on the decision. The appeal is not a legal proceeding.
> City Representatives at Appeal/Grievance Hearing: The City's Human Resources Official will coordinate and attend the appeal. The

Department Director administering the discipline will attend. The City Administrator may also request the City Attorney and other City Staff to attend as deemed appropriate.

Decision of the City Administrator: After completing any investigative work deemed necessary, the City Administrator (or designee) will render a written decision to the Employee, the Department Director and the City's Human Resources Official. The decision of the City Administrator is final.

*Appeal of City Administrator Decision: This section applies to those employees reporting directly to the City Administrator for other grievances against the City Administrator regarding discrimination, sexual harassment, or violation of civil rights, as well as appeals of decisions resulting in a decrease in pay or termination, may be appealed to City Council for review. The City Administrator will have an opportunity to explain the background of the situation and answer questions from the Council during the hearing. Council may at that time issue a recommendation or a binding ruling based upon their findings. The City Administrator will then either review the recommendation of Council and act accordingly, or carry out the binding decision of Council via submittal to the Mayor or City Attorney within 5 working days of the decision or alleged incident.*

*Prohibited Retaliation: Every Employee has a right to report a grievance without fear of retaliation. Retaliation of any kind against an Employee who makes a grievance or against an Employee who participates in an investigation concerning a grievance is strictly prohibited. Any Employee retaliating against another Employee will be subject to disciplinary action, up to and including termination.*

Exhibit C attached to Beaven's Declaration is a copy of the minutes from the City Council's meeting of November 18, 2024, which includes a notation that a motion to terminate McCorquodale's employment "carried 3:1[,]" as well as a notation of the termination of the City Administrator's employment. Exhibit D to Beaven's Declaration is a copy of a letter dated April 10, 2024, from McCorquodale to the

16

City Administrator, written by McCorquodale "to serve as my written response to a perceived grievance" against McCorquodale, and an email confirming the City Administrator's receipt of the letter. According to the City, the letter relates to an unrelated matter that happened before the City's termination decision, but it otherwise demonstrates that McCorquodale was familiar with the City's grievance procedure in the City's policy manual.

The City presented evidence through the City Secretary's Declaration that McCorquodale acknowledged receipt of the City's policy manual, and that McCorquodale was aware that it was his responsibility to read and understand the policy. The City also presented evidence through Beaven's Declaration that, on a prior unrelated occasion, McCorquodale knew how to participate in the grievance process. Beaven also stated in her Declaration that all written grievances filed by city employees under section 6.16 of the City's Personnel Policy are kept in the usual course of business in the City's personnel files and, that if an employee files a grievance, the document is filed in the employee's personnel file. Beaven stated in her Declaration that, according to McCorquodale's personnel file, he did not submit a written grievance in connection with the termination of his employment. Accordingly, the City met its burden by providing evidence that McCorquodale failed to initiate a grievance regarding his termination before filing suit as required

17

by section 554.006(a) of the Act. *See Miranda*, 133 S.W.3d at 228; *see also* Tex. Gov't Code Ann. § 554.006(a).

The burden then shifted to McCorquodale to present evidence raising a fact issue as to whether he initiated a grievance as required by the Act. *See Miranda*, 133 S.W.3d at 228; *see also* Tex. Gov't Code Ann. § 554.006(a). McCorquodale attached to his Response to the City's Plea his sworn affidavit, wherein he avers:

1. "My name is David McCorquodale. I am over the age of eighteen and am otherwise fully competent to make this affidavit. I have never been convicted of a felony. The matters contained in this affidavit are all with my personal knowledge and are true and correct.

2. I am the Plaintiff in this lawsuit.

3. I reported the Montgomery City Police Chief Anthony Solomon to the Montgomery County District Attorney's Public Integrity Division in good faith, as I had reason to believe that he was attempting to pass a fraudulent contract off as genuine in an attempt to obtain more benefits and a higher salary, which would constitute fraud and would be a misuse of public tax funds. The Montgomery County District Attorney's Public Integrity Division referred the matter to the Texas Rangers.

4. Prior to my termination, I asked the City Administrator, Gary Palmer about filing a grievance against Sara Countryman for her public disparagement of me during a city meeting. The City Administrator said he conferred with the City Attorney who said the grievance policy did not apply to elected officials and it only applied to city staff actions. I was told I could not file a grievance against any member of the governing body.

5. After my termination I did not file a grievance for several reasons. First, during the city council meeting where I was terminated, Gary Palmer, who would have been the one to appeal to (or file the

18

grievance with) was terminated before I was, rending there nobody that I could appeal to. Moreover, the inherent wording of the Grievance Policy in the City of Montgomery's manual confirms that the grievance policy is not mandatory. Specifically, i[t] provides that "an employee **may** submit a written response to any formal disciplinary action or perceived grievance within 5 working days to his/her Department Director." The use of the word "may" clearly confirms that the engagement of the grievance policy is permissive as opposed to mandatory. The same permissive language, specifically the use of the word "may[,]" applies to the policy stated by the city in its Plea to the Jurisdiction that addresses employees who are terminated. Contrary to the position taken by the city, I was not required to use the process. I had the option to grieve but declined the option.

6. Further affiant sayeth naught."

In McCorquodale's wife's affidavit which is also attached to his Response, she attested that she was present at the November 18, 2024 Montgomery City Council Meeting, that her husband's employment was terminated during the meeting, and that during the meeting and after her husband's termination, Council Member Cheryl Fox told her that "David (my husband) simply couldn't get over that 'Texas Ranger thing' clearly referencing his report of illegal activity." McCorquodale also attached section 6.16 of the City's Policies & Procedures Manual.

Section 554.006 does not require the claimant to exhaust the grievance procedures before filing suit, but it does require that the grievance procedure must be initiated, and the entity is then given the time as outlined in the Act to resolve the dispute. *Barrett*, 159 S.W.3d at 632. Section 554.006(a)'s requirement that an employee initiate a grievance or appeal under a governmental entity's procedure is

19

"'to afford the governmental entity [] the opportunity to investigate and correct its errors and to resolve disputes before incurring the expense of litigation.'" *Fort Bend Indep. Sch. Dist. v. Gayle*, 371 S.W.3d 391, 395 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (quoting *W. Houston Charter Sch. All. v. Pickering*, No. 01-10-00289-CV, 2011 Tex. App. LEXIS 6589, at *23 (Tex. App.—Houston [1st Dist.] Aug. 18, 2011, no pet.) (mem. op.)); *Reeves*, 708 S.W.3d at 318; *Leyva v. Crystal City*, 357 S.W.3d 93, 99 (Tex. App.—San Antonio 2011, no pet.); *City of Fort Worth v. Shilling*, 266 S.W.3d 97, 102 (Tex. App.—Fort Worth 2008, pet. denied); *see also Fort Bend Indep. Sch. Dist. v. Rivera*, 93 S.W.3d 315, 318 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (section 554.006 is "intended to afford the governmental entity an opportunity to correct its errors by resolving disputes before facing litigation, as the expense of litigation is borne ultimately by the public[]"). "[T]o be able to do this, the governmental entity must be given reasonable notice that it has, in fact, made a mistake that can be resolved before a lawsuit is filed." *Tarrant Cnty. v. McQuary*, 310 S.W.3d 170, 178 (Tex. App.—Fort Worth 2010, pet. denied) (citing *Med. Arts Hosp. v. Robison*, 216 S.W.3d 38, 43-44 (Tex. App.—Eastland 2006, no pet.); *Smith*, 181 S.W.3d at 850).

McCorquodale argues on appeal that he "attempted to abide by the City's grievance procedures by making an appeal to the City Administrator regarding his termination[,]" but he says the City "intentionally frustrated" his efforts to initiate

the grievance process and told him that his termination was not subject to the grievance process and that nothing could be done. In support of this argument, McCorquodale refers to his affidavit wherein he states that *prior to his termination* he asked the City Administrator about filing a grievance against Mayor Countryman for her public disparagement of McCorquodale during a city meeting and that the City Administrator conferred with the City Attorney who purportedly said the grievance policy did not apply to elected officials and only applied to city staff actions. According to McCorquodale's own affidavit, the conversation with the City Administrator was prior to the termination of McCorquodale's employment, and it was an attempt to grieve Countryman's disparaging comments during a city meeting and not related to his alleged wrongful termination. When the issue in a lawsuit under the Act involves termination of employment, a grievance which does not address the termination at issue does not satisfy the initiation of a grievance requirement in section 554.006. *See Jordan v. Ector Cnty.*, 290 S.W.3d 404, 406 (Tex. App.—Eastland 2009, no pet.) (employee's grievance filed prior to her termination could not have addressed her wrongful termination under the Whistleblower Act because the termination had not yet occurred and thus it could not meet the requirements of section 554.006(a)); *cf. Burleson v. Collin Cnty. Cmty. Coll. Dist.*, No. 05-15-01361-CV, 2017 Tex. App. LEXIS 1121, at **25-26 (Tex. App.—Dallas Feb. 8, 2017, no pet.) (mem. op.) ("[b]ecause the grievance gave notice of the same allegations in the

21

lawsuit, we conclude [the employee] complied with the jurisdictional prerequisites for a whistleblower suit regarding those circumstances[]"). Here, McCorquodale's affidavit states that his alleged inquiry about filing a grievance against the Mayor was about a different matter than his termination and it could not have been a grievance of his termination because his employment had not been terminated at the time of the alleged inquiry. McCorquodale's affidavit also establishes that when he was allegedly told by the City Administrator that the grievance policy did not apply to elected officials and that McCorquodale could not file a grievance against any member of the governing body, it was in response to McCorquodale's grievance inquiry about the disparaging comments made by the Mayor prior to his termination. There is no evidence in our record to support McCorquodale's allegation that he attempted to file a grievance with the City in reference to his termination of employment, no evidence that the City thwarted or intentionally frustrated him from filing a grievance or appeal of his termination, no evidence that he filed an appeal regarding his termination or gave reasonable notice of his Whistleblower claim, no evidence that the City rejected any grievance or appeal of his termination, and no evidence that he "attempted to offer the City the opportunity to investigate and resolve this dispute without the need for litigation, but was left with no remedial option other than filing suit against the City."

22

Instead, the evidence in the record demonstrates he chose not to file a grievance regarding his termination. As for McCorquodale's argument that he had "no one to appeal to" because the person he was to report the grievance to was no longer employed by the City, the City's grievance procedure includes a list of parties in addition to the City Administrator to whom he could have provided notice of his grievance, including the City's Human Resources Official, the City Attorney, and the City Council. The Employee Acknowledgement form that the City attached as an exhibit to its Plea to the Jurisdiction demonstrates that McCorquodale received the City's Policies & Procedures Manual and that he agreed that if he had any questions or concerns regarding the policies that he "should go to [his] supervisor, department head, Human Resources Official/City Secretary or the City Administrator for guidance or direction[.]" Nothing in the record indicates that McCorquodale ever made any inquiry pertaining to his termination.

To the extent that McCorquodale argues that requiring him to file a grievance would have been an act of futility because he had been informed in the past that the City's grievance policies did not apply to him, this Court has specifically rejected similar arguments. In *Montgomery County Hospital District v. Smith*, we declined to adopt a futility exception to the Act's requirement that public employees must initiate their employers' grievance and appeal procedures to preserve their rights to sue under the Act. *See* 181 S.W.3d at 854. As we noted in *Smith*, other courts have

23

also refused to recognize a futility exception to the Act's notice requirement. *Id.* (citing *Breaux v. City of Garland*, 205 F.3d 150, 163 (5th Cir. 2000)); *see also, e.g.*, *Robison*, 216 S.W.3d at 44.

We also reject McCorquodale's argument that because the City's grievance procedure uses the word "may" in the policy manual, he was not required to file a grievance with the City to satisfy section 554.006(a)'s jurisdictional requirement. Section 554.006(a) states that "[a] public employee must initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action before suing" under the Act. Tex. Gov't Code Ann. § 554.006(a). Based on a plain reading of the statute, to comply with the Act, McCorquodale was *required* to initiate an action under the City's grievance procedures before suing the City for his Whistleblower claim. *See id.* It is of no import that the City's policy manual states that an employee "may" initiate a grievance procedure. The language adopted by the legislature in the Act expressly provides the employee "must" utilize the employer's grievance and appeal procedure as a prerequisite to filing suit. The goal of section 554.006(a)'s requirement is to give the governmental entity the opportunity to investigate and correct its errors and to resolve disputes before incurring the expense of litigation. *See Gayle*, 371 S.W.3d at 395. Our conclusion that McCorquodale was required to initiate an action under the City's grievance procedures is supported by

24

our decision in *Smith,* wherein we concluded that even "[i]n the absence of a statutory standard or a standard created by an employee manual detailing the required contents of a public employee's notice of appeal, . . . the notice must give the employer fair notice that the public employee desires to appeal the employer's disciplinary decision and fair notice of the decision made by the employer from which the employee desires to appeal." *Smith*, 181 S.W.3d at 850; *see also Robison*, 216 S.W.3d at 43-44 (even though the employer's policy was unclear, lacked any reference to a grievance procedure in the termination section, and had an "optional nature" to its language, those factors did not eliminate the Act's mandatory notice requirement).

McCorquodale presented no evidence, and we find no evidence in the record, raising a fact question as to whether he "initiate[d] action under the [City's] grievance or appeal procedures[.]" Tex. Gov't Code Ann. § 554.006(a). Accordingly, the trial court erred in denying the City's plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 228. Having sustained the City's sole issue on appeal, we reverse the trial court's order and render a dismissal of McCorquodale's claims against the City for lack of jurisdiction.

REVERSED AND RENDERED.

LEANNE JOHNSON
Justice

Submitted on October 24, 2025
Opinion Delivered November 6, 2025

Before Golemon, C.J., Johnson and Chambers, JJ.